103 P.3d 753 (2004)
Therese R. ZUVER, Petitioner,
v.
AIRTOUCH COMMUNICATIONS, INC., a foreign corporation; and Cellco Partnership, d/b/a/ Verizon Wireless; and Seattle SMSA Limited Partnership, d/b/a Verizon Wireless, a foreign partnership; and Verizon Wireless (VAW) LLC, d/b/a Verizon Wireless; and Verizon Communications, Inc.; and Vodafone Americas Asia, Inc., Respondents.
No. 74156-5.
Supreme Court of Washington, En Banc.
Argued June 8, 2004.
Decided December 23, 2004.
*756 Mitchell Alan Riese, Craig Patrick Barnes, Seattle, for Petitioner.
Elizabeth Anne Hawkins, Gregory Evans, Howard M. Ullman, Orrick Herrington & Sutcliffe LLP, San Francisco, for Respondents.
Timothy J. O'Connell, Molly Margaret Daily, Seattle, Kristopher Ian Tefft, Association of Washington Business, Olympia, for Amicus Curiae Association of Washington Business.
Rex Darrell Berry, Berry & Block LLP, Sacramento, for Amicus Curiae Circuit City Stores Inc.
Stewart Andrew Estes, Keating Bucklin & McCormack, Michael Barr King, Ralph Crockett Pond, Lane Powell Spears Lubersky LLP, Seattle, for Amicus Curiae Washington Defense Trial Lawyers.
Jeffrey Lowell Needle, Seattle, for Amicus Curiae Washington Employment Lawyers Association.
Debra Leigh Williams Stephens, Bryan Patrick Harnetiaux, Spokane, for Amicus Curiae *757 Washington State Trial Lawyers Association Foundation.
BRIDGE, J.
This case requires us to consider the enforceability of a predispute arbitration agreement between an employer, Airtouch Communications, Inc. (Airtouch), and its employee, Therese R. Zuver. Zuver appeals a superior court order granting Airtouch's motion to compel arbitration and stay proceedings. She principally argues that the arbitration agreement is both procedurally and substantively unconscionable, and thus, this court should strike down the entire arbitration agreement. Conversely, Airtouch claims that the arbitration agreement is neither procedurally nor substantively unconscionable; however, in the event that we find any of the agreement's provisions substantively unconscionable, Airtouch asserts that the agreement's severability clause requires this court to sever the offending provisions and enforce the remainder. We hold that the provisions of the agreement pertaining to confidentiality and limitation of remedies are substantively unconscionable but agree with Airtouch that the agreement's severability clause requires us to sever these provisions and enforce the remainder of the agreement.

I

STATEMENT OF FACTS
On April 10, 1997, Airtouch offered Zuver employment as a sales support representative at the yearly salary of $21,000. As part of its offer of employment, Airtouch required that Zuver accept certain conditions. One of these conditions was that Zuver sign an agreement to arbitrate her disputes.
The arbitration agreement states in relevant part:
AGREEMENT FOR ARBITRATION
Any claim, controversy or dispute between you and U S West,[[1]] unless otherwise covered by a collective bargaining agreement, whether sounding in contract, statute, tort, fraud, misrepresentation, discrimination or any other legal theory, including, but not limited to, disputes relating to the interpretation of this Attachment; ... whenever brought shall be resolved by arbitration.... You hereby waive and release all rights to recover punitive or exemplary damages in connection with any common law claims, including claims arising in tort or contract, against U S West. By signing this Attachment, you voluntarily, knowingly, and intelligently waive any right you may otherwise have to seek remedies in court or other forums, including the right to a jury trial and the right to seek punitive damages on common law claims. The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") shall govern the arbitrability of all claims, provided that they are enforceable under the Federal Arbitration Act.... Additionally, the substantive law of Colorado, only to the extent it is consistent with the terms stated in this Agreement for Arbitration, shall apply to any common law claims.
A single arbitrator engaged in the practice of law shall conduct the arbitration under the applicable rules and procedures of the American Arbitration Association ("AAA"). Any dispute that relates to your employment with U S West or to the termination of your employment will be conducted under the AAA Employment Dispute Resolution Rules.... All arbitration proceedings, including settlements and awards, under the Agreement will be confidential. The parties shall share equally the hourly fees of the arbitrator. U S West shall pay the expenses (including travel and lodging) of the arbitrator. The prevailing party in any arbitration may be entitled to receive reasonable attorney's fees.... If any party hereto files a judicial or administrative action asserting claims subject to this arbitration provision, and another party successfully stays such action and/or compels arbitration of such claims, the party filing said action shall pay *758 the other party's costs and expenses incurred in seeking such stay and/or compelling arbitration, including reasonable attorney's fees.
SEVERABILITY AND SURVIVAL OF TERMS
In case any one or more of the provisions of this Attachment shall be found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained in this Attachment will not be affected.... The provisions of this Attachment regarding trade secrets and confidential information and arbitration shall survive the termination of your employment by U S West.
Clerk's Papers (CP) at 36-37. Zuver signed the arbitration agreement on April 25, 1997. She claims that she was not offered an option to negotiate the terms of the agreement.
Zuver had been diagnosed with fibromyalgia in November 1996. After she accepted Airtouch's offer of employment, her condition worsened. As a result of her increasing fatigue and chronic pain, she requested accommodation from Airtouch in March 1999. Specifically, she requested that "she be allowed to work part-time and to telecommute, working at home." Id. at 14. Although Airtouch allegedly permitted other similarly situated employees to telecommute, it denied Zuver's request but permitted her to work part-time beginning in June 1999. Zuver began her part-time work schedule in June 1999, but by July 1999, she could no longer work even part-time because of her disability. Consequently, she went on medical leave until April 6, 2000, when Airtouch terminated her employment.
On June 3, 2002, Zuver filed a complaint in superior court alleging that Airtouch violated the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, by discriminating against her because of her disability and by failing to accommodate her disability. Airtouch answered Zuver's complaint on June 24, 2002, denying her allegations, but failing to mention the arbitration agreement. Both Zuver and Airtouch first learned of the arbitration agreement in April 2003 after Zuver had contacted Verizon Wireless, who, after acquiring Airtouch, now controlled Airtouch's former employees' personnel files, to request a copy of her file. After learning of the agreement, Airtouch informed Zuver of its discovery, and on May 21, 2003, moved to compel arbitration. On May 30, 2003, the superior court granted Airtouch's motion to compel arbitration and stayed further proceedings.
Pursuant to RAP 2.3(b)(2), Zuver filed a motion for discretionary review to this court asserting that the arbitration agreement is unenforceable because it is both procedurally and substantively unconscionable. We granted review.

II

ANALYSIS
The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, applies to all employment contracts except for employment contracts of certain transportation workers. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added.). The United States Supreme Court has stated that "[s]ection 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."[2]Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). "The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage *759 of the Act." Id. Both state and federal courts must enforce this body of substantive arbitrability law. Perry v. Thomas, 482 U.S. 483, 489, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (citing Southland Corp. v. Keating, 465 U.S. 1, 11-12, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)); see also Garmo v. Dean, Witter, Reynolds, Inc., 101 Wash.2d 585, 590, 681 P.2d 253 (1984). Courts must indulge every presumption "in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp., 460 U.S. at 25, 103 S.Ct. 927.
Although federal and state courts presume arbitrability, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); see also Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). However, courts may not refuse to enforce arbitration agreements under state laws that apply only to such agreements, Doctor's Associates, 517 U.S. at 687, 116 S.Ct. 1652 (citing Allied-Bruce, 513 U.S. at 281, 115 S.Ct. 834); see also Southland, 465 U.S. at 16, 104 S.Ct. 852; Garmo, 101 Wash.2d at 590, 681 P.2d 253, or by "rely[ing] on the uniqueness of an agreement to arbitrate." Perry, 482 U.S. at 493 n. 9, 107 S.Ct. 2520 (emphasis added).
We engage in de novo review of a trial court's decision to grant a motion to compel or deny arbitration. Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 936 (9th Cir.2001), cert. denied, 534 U.S. 1133, 122 S.Ct. 1075, 151 L.Ed.2d 977 (2002); Stein v. Geonerco, Inc., 105 Wash.App. 41, 45, 17 P.3d 1266 (2001); Tjart v. Smith Barney, Inc., 107 Wash.App. 885, 893, 28 P.3d 823 (2001), review denied, 145 Wash.2d 1027, 42 P.3d 974 (2002), cert. denied, 537 U.S. 954, 123 S.Ct. 424, 154 L.Ed.2d 303 (2002). The party opposing arbitration bears the burden of showing that the agreement is not enforceable. See Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); Stein, 105 Wash.App. at 48, 17 P.3d 1266.

UNCONSCIONABILITY
It is black letter law of contracts that the parties to a contract shall be bound by its terms. See Nat'l Bank of Wash. v. Equity Investors, L.P., 81 Wash.2d 886, 912-13, 506 P.2d 20 (1973). Zuver argues that she should be exempt from the terms of the contract with her employer here because it is both procedurally and substantively unconscionable. "The existence of an unconscionable bargain is a question of law for the courts."[3]Nelson v. McGoldrick, 127 Wash.2d 124, 131, 896 P.2d 1258 (1995) (citing Mieske v. Bartell Drug Co., 92 Wash.2d 40, 50, 593 P.2d 1308 (1979)). In Washington, we have recognized two categories of unconscionability, substantive and procedural. Id. (citing Schroeder v. Fageol Motors, Inc., 86 Wash.2d 256, 260, 544 P.2d 20 (1975)). "Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh." Schroeder, 86 Wash.2d at 260, 544 P.2d 20. "`Shocking to the conscience', `monstrously harsh', and `exceedingly calloused' are terms sometimes used to define substantive unconscionability." Nelson, 127 Wash.2d at 131, 896 P.2d 1258 (quoting Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention, 16 Wash.App. 439, 444, 556 P.2d 552 (1976)). Procedural unconscionability is "the lack of meaningful choice, considering all the circumstances surrounding the transaction including `"[t]he manner in which the contract was entered," whether each party had "a reasonable opportunity to understand the terms of the contract," and whether "the important terms [were] hidden in a maze of fine print."'" Id. at 131, 896 P.2d 1258 (quoting Schroeder, 86 Wash.2d at 260, 544 P.2d 20 (quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C.Cir.1965))). We have cautioned that *760 "these three factors [should] not be applied mechanically without regard to whether in truth a meaningful choice existed."[4]Id.

Procedural Unconscionability
As noted, to determine whether Zuver's and Airtouch's arbitration agreement is procedurally unconscionable we look to the following circumstances surrounding their transaction to determine whether Zuver lacked meaningful choice: "`[t]he manner in which the contract was entered,' whether [Zuver] had `a reasonable opportunity to understand the terms of the contract,' and whether `the important terms [were] hidden in a maze of fine print.' "Schroeder, 86 Wash.2d at 260, 544 P.2d 20 (quoting Williams, 350 F.2d at 449).
First, Zuver asserts that the arbitration agreement is an adhesion contract, which she contends justifies a finding of procedural unconscionability. We have adopted the following factors to determine whether an adhesion contract exists: "(1) whether the contract is a standard form printed contract, (2) whether it was `prepared by one party and submitted to the other on a "take it or leave it" basis', and (3) whether there was `no true equality of bargaining power' between the parties." Yakima County (W.Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 393, 858 P.2d 245 (1993) (quoting Standard Oil Co. of Cal. v. Perkins, 347 F.2d 379, 383 n. 5 (9th Cir.1965)). In Yakima County Fire Protection District, we noted that "to the extent that the characterization of a contract as an adhesion contract has any relevance to determining the validity of a contract, it is only in looking for procedural unconscionability." 122 Wash.2d at 393, 858 P.2d 245. However, the fact that an agreement is an adhesion contract does not necessarily render it procedurally unconscionable. See Yakima County Fire Prot. Dist., 122 Wash.2d at 393, 858 P.2d 245. See also Mendez v. Palm Harbor Homes, Inc., 111 Wash.App. 446, 459, 45 P.3d 594 (2002); Luna v. Household Fin. Corp., 236 F.Supp.2d 1166, 1175 (W.D.Wash.2002); Walters v. A.A.A. Waterproofing, Inc., 120 Wash.App. 354, 362, 85 P.3d 389 (2004).
Zuver's and Airtouch's arbitration agreement is an adhesion contract. First, all Airtouch employees received the standard form printed arbitration agreement. Airtouch informed Zuver that she must sign the agreement as a condition of its offer of employment, i.e., on a "take it or leave it basis." Presumably, Zuver could not negotiate the terms of the agreement with Airtouch. Thus, there was "`no true equality of bargaining power.'" Yakima County Fire Prot. Dist., 122 Wash.2d at 393, 858 P.2d 245 (quoting Standard Oil, 347 F.2d at 383 n. 5). Nonetheless, the fact that Zuver's and Airtouch's arbitration agreement is an adhesion contract does not end our inquiry. Id.
Zuver further asserts that the arbitration agreement is procedurally unconscionable because her unequal bargaining power precluded her from "`enjoying a meaningful opportunity to negotiate and choose the terms of the contract.'" Br. of Pet'r at 24 (quoting Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1171 (9th Cir.2003), cert. denied, 540 U.S. 1160, 124 S.Ct. 1169, 157 L.Ed.2d 1204 (2004)). Airtouch, however, argues that the mere presence of unequal bargaining power does not render the agreement procedurally *761 unconscionable. Airtouch claims that it provided Zuver with a reasonable opportunity to consider the terms of the agreement and that its terms were fully disclosed. Thus, Airtouch reasons that Zuver had a meaningful choice to sign the agreement.
We agree with Airtouch. Washington courts have long held that the fact that unequal bargaining power exists will not, standing alone, justify a finding of procedural unconscionability. See Yakima County Fire Prot. Dist., 122 Wash.2d at 392-93, 858 P.2d 245; Tjart, 107 Wash.App. at 898-99, 28 P.3d 823; Pub. Employees Mut. Ins. Co. v. Hertz Corp., 59 Wash.App. 641, 650, 800 P.2d 831 (1990), review denied, 116 Wash.2d 1013, 807 P.2d 884 (1991); Mendez, 111 Wash.App. at 459, 45 P.3d 594. Rather, the key inquiry for finding procedural unconscionability is whether Zuver lacked meaningful choice. See Schroeder, 86 Wash.2d at 260, 544 P.2d 20. As described in detail below, the facts here show that Zuver had a meaningful choice.
First, Airtouch sent Zuver a letter on April 10, 1997, explaining that it was extending her an offer of employment for a sales support representative position provided that she sign six documents, one of which was the arbitration agreement. Airtouch did not demand that Zuver return the agreement immediately. In fact, Zuver did not sign the agreement until April 25, 1997, 15 days after Airtouch first contacted her. She had ample opportunity to contact counsel or even Airtouch with any concerns or questions she might have had about the terms of the agreement. See Luna, 236 F.Supp.2d at 1176 (three-day rescission period provided parties with a reasonable opportunity to consider the terms of the agreement). She did neither.
Additionally, the important terms of the arbitration agreement were not hidden in a "`maze of fine print.'" Schroeder, 86 Wash.2d at 260, 544 P.2d 20 (quoting Williams, 350 F.2d at 449). Although Zuver received the agreement with five other attachments, the agreement was clearly labeled "ARBITRATION AGREEMENT," underlined, bolded, and in capital letters. CP at 36. See M.A. Mortenson Co. v. Timberline Software Corp., 140 Wash.2d 568, 588, 998 P.2d 305 (2000) (holding that the fact that a license agreement's terms were in capital letters did not support the party's argument that the agreement was procedurally unconscionable). Lastly, the agreement's terms were in normal typeface and font, and the agreement itself was only one page long. CP at 36-37. See Luna, 236 F.Supp.2d at 1176 (holding that one-page long arbitration agreement with terms in newspaper size typeface did not support a finding that the agreement was procedurally unconscionable).
In the end, Zuver relies solely on her lack of bargaining power to assert that we should find the agreement procedurally unconscionable. This will not suffice. At minimum, an employee who asserts an arbitration agreement is procedurally unconscionable must show some evidence that the employer refused to respond to her questions or concerns, placed undue pressure on her to sign the agreement without providing her with a reasonable opportunity to consider its terms, and/or that the terms of the agreement were set forth in such a way that an average person could not understand them. See Nelson, 127 Wash.2d at 135-36, 896 P.2d 1258; Schroeder, 86 Wash.2d at 261-62, 544 P.2d 20; M.A. Mortenson Co., 140 Wash.2d at 588, 998 P.2d 305. Indeed, as the Fourth Circuit aptly reasoned, if a court found procedural unconscionability based solely on an employee's unequal bargaining power, that holding "could potentially apply to [invalidate] every contract of employment in our contemporary economy." Adkins v. Labor Ready, Inc., 303 F.3d 496, 501 (4th Cir.2002).

Substantive Unconscionability
Next, Zuver argues that the arbitration agreement's fee-splitting, attorney fees, confidentiality, and remedies limitations provisions are substantively unconscionable. Airtouch, however, asserts that Zuver improperly relies on California and the Ninth Circuit, and that, in any event, none of the cited provisions are substantively unconscionable.

Fee-Splitting Provision
Zuver claims that the fee-splitting provision in the arbitration agreement is substantively *762 unconscionable because "`[t]he arbitration process cannot generally require the employee to bear any type of expenses that the employee would not be required to bear if he or she was free to bring the action in court.'" Br. of Pet'r at 10 (quoting Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 110-11, 6 P.3d 669, 99 Cal.Rptr.2d 745 (2000)). Zuver contends that requiring her to split the arbitrator's fees would make the costs of her suit prohibitively expensive. Airtouch, on the other hand, argues that pursuant to the United States Supreme Court's decision in Green Tree Financial Corp., 531 U.S. at 91-92, 121 S.Ct. 513, Zuver has failed to meet her burden to produce evidence showing that this fee-splitting provision makes arbitration prohibitively expensive. Airtouch also argues that, since it has offered to pay the arbitrator's fees in full, Zuver's argument is moot.
In Green Tree Financial Corp., the United States Supreme Court considered an argument similar to Zuver's. 531 U.S. at 91-92, 121 S.Ct. 513. There the petitioner, Randolph, argued that an arbitration agreement's fee-splitting provision effectively denied her a forum to vindicate her discrimination claims.[5]Id. at 90, 121 S.Ct. 513. The Court acknowledged that arbitration fees could prohibit employees from bringing their discrimination claims but held that "where ... a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Id. at 92, 121 S.Ct. 513.
Like Randolph, Zuver offers no specific information about the arbitration fees she will be required to share and why such fees would effectively prohibit her from bringing her claims. Instead, she urges us to adopt the Court of Appeals decision in Mendez, 111 Wash.App. 446, 45 P.3d 594. In that case the court considered whether a fee-splitting provision in an arbitration agreement was substantively unconscionable. Applying the United States Supreme Court's holding in Green Tree Financial Corp., the court first held that the party seeking to avoid arbitration, Mendez, must provide evidence showing that arbitration would impose prohibitive costs. Id. at 461-62, 45 P.3d 594. At the trial court, Mendez had produced an affidavit describing his difficult financial circumstances and provided information obtained from the American Arbitration Association's (AAA) Seattle office, which stated that parties must generally pay a $2,000 initial filing fee for arbitrations. Id. at 465, 45 P.3d 594. The Court of Appeals found that this evidence sufficiently established that the fee-splitting provision was substantively unconscionable since it effectively barred Mendez from pursuing his $1,500 claim against the respondent, Palm Harbor Homes, Inc. Id. at 467-68, 45 P.3d 594. Notably, the court also stated that "[o]nce prohibitive costs are established, the opposing party must present contrary offsetting evidence to enforce arbitration." Id. at 470, 45 P.3d 594. The court acknowledged that such evidence could include an offer to "defray the cost of arbitration pending the outcome." Id. (citing Phillips v. Assocs. Home Equity Servs., Inc., 179 F.Supp.2d 840, 846 (N.D.Ill.2001); Camacho v. Holiday Homes, Inc., 167 F.Supp.2d 892, 897 n. 3 (W.D.Va.2001); Zumpano v. Omnipoint Communications, Inc., 84 Fair Empl. Prac. Cas. (BNA) 1592, 2001 WL 43781, at *11 (E.D.Pa.)).
We agree with the Mendez court's approach for determining the conscionability of fee-splitting provisions insofar as it analyzes a fee-splitting provision in the *763 context of the particular circumstances of the parties to the arbitration agreement, rather than finding such a provision to be per se unconscionable. Accord Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 268-69 (3d Cir.2003) (holding that plaintiff must produce evidence showing an inability to pay and information regarding arbitration costs); Shankle v. B-G Maint. Mgmt. of Colo., Inc., 163 F.3d 1230, 1235 (10th Cir.1999) (holding that plaintiff produced sufficient evidence showing that he could not afford the arbitrator's fees); Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 557-58 (4th Cir.2001) (holding that plaintiff must produce specific evidence showing that he could not afford the arbitrator's fees). Nonetheless, although Zuver urges us to apply Mendez to her case, she has failed to provide any evidence here comparable to the affidavits and information produced by Mendez.[6] Moreover, even if Zuver had provided such evidence, Airtouch has offered to "defray the cost of arbitration" by paying arbitration fees. Mendez, 111 Wash.App. at 470, 45 P.3d 594. Thus, given the circumstances of this case, we conclude that Zuver's claim is moot.[7]See Large v. Conseco Fin. Servicing Corp., 292 F.3d 49, 56-57 (1st Cir.2002) ("Conseco's offer to pay the costs of arbitration ... mooted the issue of arbitration costs."); Nelson v. Insignia/Esg, Inc., 215 F.Supp.2d 143, 157 (D.D.C.2002) ("defendant's offer to pay all fees and expenses of arbitration effectively obviated any concerns the plaintiff may have raised regarding her ability to vindicate her claims").

Attorney Fees Provision-Arbitration
The arbitration agreement also provides that "[t]he prevailing party in any arbitration may be entitled to receive reasonable attorney's fees." CP at 36 (emphasis added). Zuver argues that this provision is substantively unconscionable because it would dissuade individuals who have endured discrimination from pursuing their claims because an arbitrator might make them pay the employer's attorney fees if they failed to prevail. Zuver further asserts that in the event she does prevail, the arbitrator is not obligated to award her attorney fees as would be required under RCW 49.60.030(2).[8] Airtouch, however, argues that this court cannot assume that the arbitrator would fail to abide by RCW 49.60.030(2), and that "nothing in the Arbitration Agreement reduces Zuver's right to recover attorney's fees if she were to prevail on the merits." Br. of Resp't at 26.
In instances such as this, where parties dispute the potential but unknown effect of a particular provision in an arbitration agreement, the United States Supreme Court's decision in PacifiCare Health Systems, Inc. v. Book, 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003), provides guidance. There the Court considered an arbitration agreement which stated "`[t]he arbitrators ... shall have no authority to award any ... punitive or exemplary damages.'" Id. at 405, 123 S.Ct. 1531 (quoting App. 212). But the party opposing arbitration, Book, alleged violations *764 of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c), which provides for treble damage awards. Id. at 406, 123 S.Ct. 1531. Book argued that the arbitration agreement's prohibition on punitive damages would effectively deny him the relief he was entitled to under RICO, i.e., treble damages. Id. at 404, 123 S.Ct. 1531. The Court, however, noted that it had construed RICO's treble damages to be both punitive and remedial in nature. Id. at 406, 123 S.Ct. 1531. Consequently, it reasoned that:
[W]e should not, on the basis of "mere speculation" that an arbitrator might interpret these ambiguous agreements in a manner that casts their enforceability into doubt, take upon ourselves the authority to decide the antecedent question of how the ambiguity is to be resolved. In short, since we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract.
Id. at 406-07, 123 S.Ct. 1531 (quoting Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 541, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995)). Thus, the Court compelled arbitration. Id.
Similar to the punitive damages provision in PacifiCare, the effect of the attorney fees provision in Zuver's and Airtouch's agreement is, at this point, purely speculative. The provision does not use the directive "shall" but rather, uses the permissive word "may." CP at 36. Thus, Zuver merely speculates that an arbitrator might construe this provision to deny her attorney fees if she prevails on her discrimination claim. See PacifiCare, 538 U.S. at 406-07, 123 S.Ct. 1531. Likewise, it is mere speculation to assume that the arbitrator would disregard case law holding that a prevailing defendant may receive attorney fees only if a plaintiff's discrimination claim was "frivolous, unreasonable, or without foundation." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), cited with approval in Wash. State Republican Party v. Pub. Disclosure Comm'n., 141 Wash.2d 245, 289, 4 P.3d 808 (2000). Consequently, we conclude that this attorney fees provision is not substantively unconscionable.

Confidentiality Provision
Relying on the Ninth Circuit's decision in Ting v. AT&T, 319 F.3d 1126, 1151-52 (9th Cir.), cert. denied, 540 U.S. 811, 124 S.Ct. 53, 157 L.Ed.2d 24 (2003) and a federal district court decision applying Washington law, Luna, 236 F.Supp.2d at 1180-81, Zuver asserts that the confidentiality provision unduly favors Airtouch and thus, is substantively unconscionable.[9] In Ting, the Ninth Circuit held that an arbitration agreement's confidentiality provision was unconscionable because "AT & T ha[d] placed itself in a far superior legal posture by ensuring that none of its potential opponents have access to precedent while, at the same time, AT & T accumulates a wealth of knowledge on how to negotiate the terms of its own unilaterally crafted contract." 319 F.3d at 1152. See also Torrance v. Aames Funding Corp., 242 F.Supp.2d 862, 875 (D.Or.2002) (holding that confidentiality provision in an arbitration agreement appended to a mortgage contract would give mortgagors "a vastly superior legal posture"). Similarly, in Luna, the court there held that a confidentiality provision in an arbitration agreement was substantively unconscionable since "repeat arbitration participants enjoy advantages over one-time participants [and] ... the ... confidentiality provision magnifies the effect of those advantages."[10] 236 F.Supp.2d at 1181.
*765 In response, Airtouch urges us to adopt the analysis articulated by the California Court of Appeal in Woodside Homes of California, Inc. v. Superior Court, 107 Cal.App.4th 723, 731-32, 132 Cal.Rptr.2d 35 (2003). There the court considered whether a confidentiality provision in a contract between two sophisticated parties was substantively unconscionable. The party seeking to void the contract argued that the confidentiality provision would impair the public's interest in open proceedings. Id. at 732, 132 Cal.Rptr.2d 35. The court rejected its argument reasoning that "[t]hese concerns have nothing to say about the fairness or desirability of a secrecy provision with respect to the parties themselves, and we see nothing unreasonable or prejudicial about it." Id.
However, unlike the party in Woodside Homes, Zuver does not argue that the public interest in open arbitration proceedings alone renders this provision substantively unconscionable. Rather, she contends that the effect of this confidentiality provision is harsh and blatantly benefits only Airtouch because it "serves no purpose other than to tilt the scales of justice in favor of the employer by denying access to any information about other claims against the employer to other potential victims of discrimination." Br. of Pet'r at 20. Consequently, we do not find the court's analysis in Woodside Homes compelling in these circumstances.
Airtouch alternatively argues that since confidentiality provisions are routinely included in arbitration agreements, such provisions cannot be substantively unconscionable. See State Bd. of Labor Relations v. Freedom of Info. Comm'n, 244 Conn. 487, 500, 709 A.2d 1129 (1998) (holding that arbitration proceedings before a public mediation board could be confidential); Lloyd v. Hovensa LLC, 243 F.Supp.2d 346, 351-52 (D.Vi.2003) (noting that AAA rules provide that arbitrations can be confidential), overruled on other grounds by, 369 F.3d 263 (3d Cir.2004). Indeed, this court has acknowledged that arbitrations are often confidential. See Barnett v. Hicks, 119 Wash.2d 151, 159, 829 P.2d 1087 (1992) (noting that confidential proceedings in arbitrations are an exception to the state constitutional requirement that judicial proceedings be public). Parties in labor arbitrations also routinely include confidentiality provisions in their collective bargaining agreements. See Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1477 (D.C.Cir.1997).
Nonetheless, although courts have accepted confidentiality provisions in many agreements, it does not necessarily follow that this confidentiality provision is conscionable. As the court aptly noted in Cole,
[W]hile a lack of public disclosure of arbitration awards is acceptable in the collective bargaining context, because both employers and unions monitor such decisions and the awards rarely involve issues of concern to persons other than the parties, in the context of individual statutory claims, a lack of public disclosure may systematically favor companies over individuals.
Id. at 1477. The effect of the provision here benefits only Airtouch. As written, the provision hampers an employee's ability to prove a pattern of discrimination or to take advantage of findings in past arbitrations. Moreover, keeping past findings secret undermines an employee's confidence in the fairness and honesty of the arbitration process and thus, potentially discourages that employee from pursuing a valid discrimination claim. Therefore, we hold that this confidentiality provision is substantively unconscionable.[11]

Remedies Limitation Provision
Citing Armendariz, 24 Cal.4th at 119-20, 99 Cal.Rptr.2d 745, 6 P.3d 669, Zuver also argues that the agreement's provision *766 stating, "[y]ou hereby waive and release all rights to recover punitive or exemplary damages in connection with any common law claims, including claims arising in tort or contract, against U S West," is substantively unconscionable because it applies only to her, i.e., the provision is unilateral.[12] CP at 36. In Armendariz, the California Supreme Court held that an arbitration provision which required that the employee arbitrate his wrongful discharge claims but did not require the employer "to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences," is not bilateral, and is thus, substantively unconscionable. 24 Cal.4th at 120, 99 Cal.Rptr.2d 745, 6 P.3d 669.
Similar to the employee in Armendariz, Zuver contends that the provision in her agreement pertaining to punitive or exemplary damages fails to equally apply to Airtouch, e.g., Airtouch could still seek punitive or exemplary damages against her for claims based on disclosure of confidential information in Colorado,[13] which pursuant to the agreement, is the substantive law governing all common law claims.[14]See Rubenstein v. S. Denver Nat'l Bank, 762 P.2d 755, 757 (Colo.Ct.App.1988) (holding that exemplary damages for breach of the duty of nondisclosure are available when a plaintiff has an adequate remedy at law for damages). However, relying on Raasch v. NCR Corp., 254 F.Supp.2d 847 (S.D.Ohio 2003), Airtouch contends that complete mutuality of remedies is not required in arbitration agreements.[15]
In Raasch, a federal district court considered Raasch's assertion that her arbitration agreement did not impose mutual obligations since it excluded disputes over confidentiality, noncompete agreements, or intellectual property rights. 254 F.Supp.2d at 855. The court rejected Raasch's claim, reasoning that:
Mutuality requires only that both Raasch and NCR be bound to the terms of any dispute that is required to be submitted to the arbitrator.... That is all that is required insofar as mutuality of obligation is concerned; nothing in that doctrine requires that just because both parties agree to arbitrate discrimination disputes and the like they must also agree to arbitrate every other type of dispute.
Id. at 856-57. See also In re FirstMerit Bank, N.A., 52 S.W.3d 749, 757 (Tex.2001); Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179-80 (3d Cir.1999).
Like the Raasch court, Washington courts have long held that mutuality of obligation means both parties are bound to perform *767 the contract's terms  not that both parties have identical requirements. See Metro. Park Dist. of Tacoma v. Griffith, 106 Wash.2d 425, 434, 723 P.2d 1093 (1986) ("A supposed promise is illusory when its provisions make its performance optional or discretionary on the part of the claimed promisor.") (citing Wharf Rest., Inc. v. Port of Seattle, 24 Wash.App. 601, 609, 605 P.2d 334 (1979)).
Zuver, however, does not simply argue that the arbitration agreement here lacks mutuality.[16]See Brem-Rock, Inc. v. Warnack, 28 Wash.App. 483, 489 n. 8, 624 P.2d 220 (1981) (noting if a contract lacked a "`corresponding duty,'" by the party seeking enforcement, a contract "would be unenforceable for lack of mutuality, not unconscionab[ility]"), overruled on other grounds by, French v. Sabey Corp., 134 Wash.2d 547, 557, 951 P.2d 260 (1998). Rather, she contends that the effect of this provision is so one-sided and harsh that it is substantively unconscionable. We agree.[17] Indeed, this provision appears to heavily favor Airtouch. It bars Zuver from collecting any punitive or exemplary damages for her common law claims but permits Airtouch to claim these damages for the only type of suit it would likely ever bring against Zuver, that is, for breach of her duty of nondisclosure of Airtouch's confidential information. The remedies limitation provision blatantly and excessively favors the employer in that it allows the employer alone access to a significant legal recourse. Consequently, we conclude that this provision is substantively unconscionable in these circumstances.[18]

*768 Attorney Fees Provision  Nonarbitration

Lastly, Zuver challenges the attorney fees provision requiring that a party who files a judicial action must pay attorney fees and costs to the opposing party who successfully stays such action and/or compels arbitration.[19] She asserts that this provision is substantively unconscionable because it "discourage[s] an employee from bringing a discrimination claim," and in her case, she "is faced with the prospect of having to pay Respondents' attorney's fees, which could well be tens of thousands of dollars." Br. of Pet'r at 32. However, as Airtouch aptly notes, this provision permits either party to recover fees on a successful motion to stay an action and/or compel arbitration. Thus, it does not appear to be so one-sided and harsh as to render it substantively unconscionable.

SEVERANCE
Zuver argues that the taint of the unconscionable provisions requires us to declare the entire arbitration agreement unenforceable despite its severability clause. Conversely, Airtouch argues that pursuant to the agreement's severability clause, we should simply strike any unconscionable provisions.
We agree with Airtouch. Courts are generally loath to upset the terms of an agreement and strive to give effect to the intent of the parties. See Tanner Elec. Coop. v. Puget Sound Power & Light Co., 128 Wash.2d 656, 674, 911 P.2d 1301 (1996). Consequently, when parties have agreed to a severability clause in an arbitration agreement, courts often strike the offending unconscionable provisions to preserve the contract's essential term of arbitration. See DANIEL P. O'MEARA, ARBITRATION OF EMPLOYMENT DISPUTES § 4.22 (2002) (citing Wright v. Circuit City Stores, Inc., 82 F.Supp.2d 1279, 1287 (N.D.Ala.2000); Etokie v. Carmax Auto Superstores, Inc., 133 F.Supp.2d 390, 394 (D.Md.2000)); see also Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 221-22 (3d Cir.2003) (holding that unconscionable fee-splitting and attorney fees provisions could be severed from the agreement even in the absence of a severability clause); Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 675 (6th Cir.2003) (holding that unconscionable fee-splitting and remedies provisions could be severed); Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 683 (8th Cir.2001) (holding that unconscionable damages provision could be severed to preserve the parties' "contractual intent to arbitrate"). Although some courts have declined to sever unconscionable provisions where those provisions pervade an agreement, here we are faced with only two unconscionable provisions. Cf. Alexander, 341 F.3d at 271 ("The cumulative effect of so much illegality prevents us from enforcing the arbitration agreement."); Ingle, 328 F.3d at 1180 ("Any earnest attempt to ameliorate the unconscionable aspects of Circuit City's arbitration agreement would require this court to assume the role of contract author rather than interpreter."). We can easily excise the confidentiality and remedies provisions but enforce the remainder. Indeed, the parties have explicitly expressed their intent for us to do so by agreeing to a severance clause.[20] *769 Therefore, we sever the confidentiality and remedies provisions from the agreement and otherwise affirm the trial court's order to compel arbitration.

ADDITIONAL CLAIMS
Zuver also argues that the arbitration agreement deprives her of her state constitutional right to access the courts; the WLAD requires a judicial forum to litigate discrimination claims; her state constitutional right to a jury trial was violated; and, Airtouch waived its right to arbitrate. Zuver, however, failed to raise these issues to the trial court or in her motion for discretionary review to this court. As such, we decline to consider these issues here.[21]See John Doe v. Puget Sound Blood Ctr., 117 Wash.2d 772, 780, 819 P.2d 370 (1991) (refusing to consider defendant's additional theory of relief advanced on appeal of a trial court's discovery order since the defendant had failed to raise the theory below); State ex rel. Corey v. Grenley, 78 Wash.App. 864, 869, 899 P.2d 830 (1995) (refusing to consider additional issues advanced by Grenley in his respondent's brief since he had failed to raise the issues to the trial court and failed to designate the issues for review to the Court of Appeals).

III

CONCLUSION
We reject Zuver's claims that the arbitration agreement is procedurally unconscionable and that the provisions pertaining to attorney fees are substantively unconscionable. We hold that Zuver's claim that the fee-splitting provision is substantively unconscionable is moot since Airtouch has agreed to pay the entire amount of the arbitrator's fees. However, we agree with Zuver that the confidentiality and remedies provisions of the agreement are substantively unconscionable. While we conclude that these two provisions are substantively unconscionable, pursuant to the severance clause in the parties' agreement, we now sever those provisions and affirm the trial court's order compelling arbitration.
ALEXANDER, C.J., IRELAND, CHAMBERS, OWENS, SANDERS, FAIRHURST, and MADSEN, JJ., concur.
MADSEN, J. (concurring/dissenting).
The majority holds that the remedies limitation provision in the parties' arbitration agreement is substantively unconscionable because it "appears to heavily favor" employer Airtouch Communications, Inc. Majority at 767. The majority claims that it does not decide this issue based on lack of mutuality of obligations, but that is exactly what the majority does. Lack of mutual obligation, however, is not a legitimate basis on which to invalidate the limitation. Moreover, the remedies limitation provision lacks the one-sided harshness that is shocking to the conscience, and which characterizes substantively unconscionable contract terms. Accordingly, I do not agree with the majority's conclusion that the provision must be invalidated under the doctrine of unconscionability.
As a practical matter, the majority's invalidation of the remedies limitation provision has no present impact in this case because it applies only to common law claims brought by employee Therese Zuver against her employer. The only claim she has raised at this point is that Airtouch violated the Washington Law Against Discrimination. And, since the majority finds the provision severable, its *770 invalidation does not render the remainder of the arbitration agreement unenforceable.[1]
Far more important than the effect of the majority's ruling in this particular case is the impact it will have in future cases. The majority's analysis opens the door to claims of unconscionability whenever only one party to an employment arbitration agreement is constrained under one term of the agreement. The end result of the majority's decision is the erosion of arbitration agreements in the employment context under the guise of applying state contract law pertaining to substantive unconscionability. The majority's analysis contravenes the spirit, if not the letter, of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, and United States Supreme Court decisions implementing the act in the employment setting.

ANALYSIS
The remedies limitation provision states that by signing the arbitration agreement, the party waives "the right to seek punitive damages on common law claims." Clerk's Papers (CP) at 36-37. The agreement further provides that the substantive law of Colorado applies to common law claims. Zuver argues that the remedies limitation provision lacks "a modicum of bilaterality" of remedies and is thus substantively unconscionable. Br. of Pet'r at 20-23. Zuver relies on Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000), for the proposition that a "lack of mutuality of remedies," i.e., "an inherent imbalance in the remedies available to the parties to the arbitration agreement" is "fundamentally unfair and unconscionable." Reply Br. of Pet'r at 17, 18. At heart, Zuver is arguing for mutuality of obligation, in particular, mutuality of available remedies.
As the majority correctly notes, this court has rejected the premise that there must be mutuality of obligations in a contract. Majority at 766-67. Indeed, the Restatement (Second) of Contracts § 79 (1981) states: "If the requirement of consideration is met, there is no additional requirement of ... `mutuality of obligation.'"[2] Accordingly, a majority of courts have rejected the premise that arbitration clauses must contain mutual obligations, provided that the underlying contract is supported by adequate consideration. See, e.g., Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 451-52 (2d Cir.1995); Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179-81 (3d Cir.1999); Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp., 878 F.2d 167, 168-69 (6th Cir.1989); Young v. Jim Walter Homes, Inc., 110 F.Supp.2d 1344, 1350 (M.D.Ala.2000); Pridgen v. Green Tree Fin. Servicing Corp., 88 F.Supp.2d 655, 658-59 (S.D.Miss.2000); W.L. Jorden & Co. v. Blythe Indus., Inc., 702 F.Supp. 282, 284 (N.D.Ga.1988); Willis Flooring, Inc. v. Howard S. Lease Constr. Co. & Assocs., 656 P.2d 1184, 1185 (Alaska 1983); Ex parte Smith, 736 So.2d 604, 612-13 (Ala.1999); Lackey v. Green Tree Fin. Corp., 330 S.C. 388, 398, 498 S.E.2d 898 (Ct.App.1998); In re FirstMerit Bank, N.A., 52 S.W.3d 749 (Tex.2001); Sablosky v. Edward S. Gordon Co., 73 N.Y.2d 133, 137, 538 N.Y.S.2d 513, 535 N.E.2d 643 (1989); see Arthur M. Kaufman & Ross M. Babbitt, The Mutuality Doctrine in the Arbitration Agreements: The Elephant in the Road, 22 FRANCHISE L.J. 101, 102 (Fall 2002) ("[t]he requirement of mutuality of obligation has been denounced as defunct by a majority of courts").[3]
*771 The majority reasons, however, that Zuver does not just argue for mutuality of obligation, but instead argues that the remedies limitation provision "is so one-sided and harsh that it is substantively unconscionable." Majority at 767. Initially, a review of petitioner's briefs leaves me in doubt that Zuver's argument is as the majority states. In any event, the majority ultimately determines that the term is substantively unconscionable because it is one-sided. The majority says that the only common law claim that employer Airtouch would ever be likely to bring against Zuver is for breach of a duty of nondisclosure of confidential information, and punitive or exemplary damages are available for that claim. Majority at 767.
Although couched in terms of unconscionability, the majority effectively reasons that the provision is invalid because the employee must forgo punitive or exemplary damages, while the employer does not forgo such damages in the only likely case where the employer might bring a common law claim. In other words, the clause is invalid for lack of reciprocal obligations, i.e., lack of mutuality of obligation.
Because mutuality of obligation is not required as a matter of state contract law, the absence of such mutuality is not a legitimate basis for invalidating an arbitration clause in this state. The FAA's purpose, the United States Supreme Court has said, is "to place arbitration agreements on the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Arbitration agreements must be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[4] Thus, since lack mutuality of obligation is not a basis on which to invalidate contracts in Washington, it is not a basis on which an arbitration clause can be invalidated. And a claim of lack of mutual obligations, here, mutual remedies, should not be a basis for overturning an arbitration clause merely because it is recast as a claim of substantive unconscionability. In the end, the majority's analysis circumvents the FAA's requirement that arbitration agreements be assessed under the same state law principles applying to contracts generally.
By finding substantive unconscionability here, the majority's decision opens the gates to claims of unconscionability in employment arbitration agreements whenever a one-sided clause is alleged, regardless of the arbitration agreement as a whole and the employment contract as a whole. The United States Supreme Court has made it clear, however, that employment arbitration agreements are enforceable, except for those covering workers engaged in transportation. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).
Perhaps more disturbing, the majority's conclusion is inconsistent with the doctrine of substantive unconscionability. This court has stated that substantive unconscionability requires a determination that the clause or term in the contract is "one-sided or overly harsh." Schroeder v. Fageol Motors, Inc., 86 Wash.2d 256, 260, 544 P.2d 20 (1975). This statement however, should not be invoked to impose a requirement of mutuality of obligation; *772 mere one-sidedness of a term resulting from one party incurring an obligation where no reciprocal obligation is incurred by the other party should not be enough to conclude that a clause is substantively unconscionable. Other terms used to describe substantive unconscionability provide guidance. The term must be "overly harsh," or, as has also been stated," `[s]hocking to the conscience', `monstrously harsh', [or] `exceedingly calloused.'" Nelson v. McGoldrick, 127 Wash.2d 124, 131, 896 P.2d 1258 (1995) (quoting Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention, 16 Wash.App. 439, 444, 556 P.2d 552 (1976)).
This arbitration agreement prohibits recovery of punitive or exemplary damages for successful claims under Colorado's common law. While there are clearly common law claims that an employee might bring against an employer, where a Washington employee is concerned there are also numerous potential statutory claims that must be brought under Washington law and for which no punitive or exemplary damages are available. Comparing the employee's potential claims against Airtouch, including statutory claims, against the limited category of claims where Airtouch might recover punitive or exemplary damages under Colorado law common law, I cannot agree that the remedies limitation provision is overly harsh or shocking to the conscience.
Next, the majority correctly rejects Zuver's argument for a special standard applicable to employment arbitration agreements. Majority at 766 n. 12 (rejecting apparent claim that a standard analogous to that for consumer transactions should apply); see Reply Br. of Pet'r at 16-17. However, Zuver makes another argument that should also be rejected. She suggests that the arbitration process will not provide her an appropriate forum allowing her to fully and effectively vindicate her rights because under the arbitration agreement she is precluded from an award of punitive or exemplary damages, and therefore the remedies limitation provision is substantively unconscionable. She cites Gilmer, and other similar cases. In Gilmer, the Court held that an age discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, was subject to compulsory arbitration pursuant to an agreement in a securities registration application. The Court observed, in a passage relied on by Zuver, that "`[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" Gilmer, 500 U.S. at 26, 111 S.Ct. 1647 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).
It is unnecessary to decide in this case whether an employee can ever waive statutory rights in an arbitration agreement because Gilmer's discussion of statutory rights clearly does not support Zuver's argument. The arbitration clause waives only the right to punitive and exemplary damages in common law actions under Colorado law.
Zuver also relies on State ex rel. Dunlap v. Berger, 211 W.Va. 549, 562, 567 S.E.2d 265, cert. denied sub nom. Friedman's, Inc. v. West Virginia ex rel. Dunlap, 537 U.S. 1087, 123 S.Ct. 695, 154 L.Ed.2d 631 (2002), where the court said that a "no punitive damages" provisions deprived the plaintiff of the "right to invoke and employ an important remedy provided by law to punish and deter illegal, willful, and grossly negligent misconduct." Dunlap, 211 W.Va. at 562, 567 S.E.2d 265. The court held that "exculpatory provisions in a contract of adhesion that if applied would prohibit or substantially limit a person from enforcing and vindicating rights and protections or from seeking and obtaining statutory or common-law relief and remedies" under state law existing for "the benefit and protection of the public are unconscionable." Dunlap, 211 W.Va. at 564, 567 S.E.2d 265.
Zuver fails to acknowledge, however, that in Washington an exculpatory clause is valid unless, among other things not relevant here, it violates public policy. Scott v. Pac. W. Mountain Resort, 119 Wash.2d 484, 492, 834 P.2d 6 (1992). A contract provision forgoing punitive damages is not against public policy in this state. See, e.g., Spokane Truck & Dray Co. v. Hoefer, 2 Wash. 45, 25 P. 1072 (1891) (punitive damages not awardable in personal injury action); Farrar v. Tribune Publ' g Co., 57 Wash.2d 549, 552-53, 358 P.2d *773 792 (1961) (defamation claim; exemplary damages unknown to Washington law); Fisher Props., Inc. v. Arden-Mayfair, Inc., 106 Wash.2d 826, 852, 726 P.2d 8 (1986) (punitive damages are not awardable unless authorized by the legislature).
Further, the policy bases in the case that Zuver relies on, punishment and deterrence, Dunlap, 211 W.Va. at 562, 567 S.E.2d 265, do not support invalidation of the remedies limitation provision on grounds of substantive unconscionability under Washington law. In Barr v. Interbay Citizens Bank of Tampa, Florida, 96 Wash.2d 692, 635 P.2d 441, 649 P.2d 827 (1981), the plaintiff brought an action for conversion of an automobile, intentional infliction of emotional distress, and outrageous conduct, as a result of events that flowed from a bank's issuance of clear title to the prior owner of the automobile rather than to the purchaser. The plaintiff sought punitive damages under Florida law, where the vehicle was purchased and the bank was located. The trial court ruled that Washington, not Florida, law would apply to the claim for punitive damages.
This court affirmed. The court observed that Florida's interest in a punitive damage award is punishment of the defendant and deterrence to similar misconduct. Barr, 96 Wash.2d at 699, 635 P.2d 441. The court reasoned, however, that Florida's interest in allowing punitive damages to deter similar misconduct would not be furthered where the acts said to warrant punitive damages had not occurred in Florida, but instead had occurred in Washington and Nevada. Id. The court reiterated the rule that punitive damages are not allowed in Washington unless expressly authorized by the legislature. Barr, 96 Wash.2d at 699, 635 P.2d 441. Quoting Spokane Truck & Dray Co., 2 Wash. at 52-53, 25 P. 1072, the court also explained that exclusive of punitive damages, the plaintiff" `is made entirely whole'" through full compensation for all injury done and all losses sustained. Barr, 96 Wash.2d at 700, 635 P.2d 441.
As Barr demonstrates, Washington does not have the same interest that West Virginia has in punitive damage awards to punish and deter wrongdoing. Accordingly, Dunlap is unpersuasive. Moreover, as Barr also indicates, any similar interest Colorado may have in punishment and deterrence would not be furthered by invalidating this remedies limitation provision which applies to a Washington resident and events occurring in Washington.
It simply does not matter that the common law claims potentially affected by the remedies limitation provision would be brought under Colorado common law. The question that Zuver raises is whether under this state's contract law the remedies limitation provision is unconscionable because it insulates Airtouch from paying punitive damages on common law claims and is, therefore, against public policy. On this question, the reasoning of the West Virginia court that Zuver advances is not in accord with this state's law on exculpatory clauses or punitive damages.[5]
I dissent, in part, from the majority opinion because it invalidates the remedies limitation provision as substantively unconscionable.
NOTES
[1] At the time Zuver entered into her agreement with Airtouch, Airtouch was a part of U.S. West New Vector Group, Inc., d/b/a Airtouch Cellular.
[2] Washington State also has a strong public policy favoring arbitration of disputes. Int'l Ass'n. of Fire Fighters, Local 46 v. City of Everett, 146 Wash.2d 29, 51, 42 P.3d 1265 (2002); Mendez v. Palm Harbor Homes, Inc., 111 Wash.App. 446, 454, 45 P.3d 594 (2002); Perez v. Mid-Century Ins. Co., 85 Wash.App. 760, 765, 934 P.2d 731 (1997).
[3] As noted, generally applicable contract defenses like unconscionability may be applied to void arbitration agreements without violating section 2 of the FAA. Doctor's Assocs., 517 U.S. at 687, 116 S.Ct. 1652.
[4] We have not explicitly addressed whether a party challenging a contract must show both substantive and procedural unconscionability. Our decisions in Nelson and Schroeder, however, analyze procedural and substantive unconscionability separately without suggesting that courts must find both to render a contract void. See also M.A. Mortenson Co. v. Timberline Software Corp., 140 Wash.2d 568, 586-88, 998 P.2d 305 (2000). A federal district court applying Washington law, as well as the Court of Appeals, has interpreted these decisions to mean that a party challenging a contract may allege either substantive or procedural unconscionability. Luna v. Household Fin. Corp., 236 F.Supp.2d 1166, 1174 (W.D.Wash.2002) (noting that "under Washington law a contract may be invalidated on procedural unconscionability or substantive unconscionability grounds"); Tjart, 107 Wash.App. at 898, 28 P.3d 823 (party seeking to avoid enforcement of an arbitration agreement on grounds of procedural unconscionability only).

In its amicus brief, the Association of Washington Business urges us to join the majority of courts that require proof of both substantive and procedural unconscionability. This court, however, need not consider issues raised only by amicus, and we decline to do so in this case. See Rabon v. City of Seattle, 135 Wash.2d 278, 291 n. 4, 957 P.2d 621 (1998).
[5] The United States Supreme Court's analysis in Green Tree Financial Corp. did not specifically focus on whether the fee-splitting provision was substantively unconscionable, but rather, on whether or not arbitration fees would effectively prevent Randolph from vindicating her statutory discrimination claims. Nonetheless, courts have applied the United States Supreme Court's holding in Green Tree Financial Corp. when addressing claims that a fee-splitting provision is substantively unconscionable. See Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 268-69 (3d Cir.2003). Moreover, Zuver also argues that this agreement's fee-splitting provision is substantively unconscionable for the same reason that Randolph asserted in Green Tree Financial Corp., i.e., the fees would effectively prohibit her from vindicating her WLAD claims. Thus, the United States Supreme Court's analysis in Green Tree Financial Corp. is particularly relevant here.
[6] Citing to Ting v. AT & T, 182 F.Supp.2d 902, 934 (N.D.Cal.2002), aff'd, 319 F.3d 1126 (9th Cir.), cert. denied, 540 U.S. 811, 124 S.Ct. 53, 157 L.Ed.2d 24 (2003), where the court found that the average daily rate of compensation for an arbitration in Northern California was $1,899, Zuver requests that we take judicial notice of the fact that arbitration costs in Washington would be similar to those in California. We decline to do so here. Under the "case by case" approach we endorse today, Zuver must produce some information showing that she cannot afford the fees in this arbitration.
[7] Zuver also argues that we cannot consider Airtouch's offer to pay the arbitrator's fees now because we have stated that courts must consider the conscionability of an agreement at the time the parties entered into the contract. See Jeffery v. Weintraub, 32 Wash.App. 536, 544, 648 P.2d 914, 919 (1982). However, if we judge the conscionability of this provision at the time the parties entered into the contract, we may be led to conclude that this provision is per se unconscionable and thus, our decision will conflict with the United States Supreme Court's holding in Green Tree Financial Corp., 531 U.S. at 91-92, 121 S.Ct. 513. Further, we believe that the "case by case" approach articulated by the Court of Appeals in Mendez properly balances the important public policy favoring arbitration of disputes with the financial means of individual plaintiffs. Thus, we refuse to ignore Airtouch's offer to pay the arbitration fees.
[8] RCW 49.60.030(2) provides that prevailing plaintiffs shall "recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees."
[9] The arbitration agreement requires that "[a]ll arbitration proceedings, including settlements and awards, under the Agreement will be confidential." CP at 36.
[10] The Luna court did not rely on Washington case law to reach this conclusion. Rather, it relied on other federal court opinions, Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1476 (D.C.Cir.1997); Ting, 182 F.Supp.2d at 931; Acorn v. Household Int'l, Inc., 211 F.Supp.2d 1160, 1172 (N.D.Cal.2002), which

recognized that repeat arbitration participants gain advantages due to superior knowledge regarding arbitrators, that "a lack of public disclosure may systematically favor companies over individuals," and that "[t]he unavailability of arbitral decisions also may prevent potential plaintiffs from locating the information necessary to build a case of intentional misconduct or to establish a pattern or practice of discrimination by particular companies."
Luna, 236 F.Supp.2d at 1180-81 (quoting Cole, 105 F.3d at 1476-77).
[11] Zuver also argues that article I, section 10 of the Washington Constitution requires open civil and criminal proceedings and thus requires us to hold that this confidentiality provision is substantively unconscionable. However, since we conclude that the confidentiality provision is substantively unconscionable on other grounds, we need not consider this argument.
[12] Zuver also appears to argue that we should apply a special standard of review to provisions in arbitration agreements which limit parties' remedies. She urges us to adopt the standards we apply to the validity of warranty disclaimers in consumer transactions set forth in Berg v. Stromme, 79 Wash.2d 184, 194-95, 484 P.2d 380 (1971). The United States Supreme Court, however, has expressly stated that courts may not rely on the uniqueness of agreements to arbitrate as justification for imposing special requirements. Perry, 482 U.S. at 492 n. 9, 107 S.Ct. 2520.
[13] Zuver was also required to sign a nondisclosure agreement when she accepted Airtouch's offer of employment. CP at 34-35.
[14] See CP at 36 ("Additionally, the substantive law of Colorado, only to the extent it is consistent with the terms stated in this Agreement for Arbitration, shall apply to any common law claims."). The concurrence/dissent's lengthy discussion of the disfavored status of punitive damages in Washington, see concurrence/dissent at 772-73, ignores the fact that the Colorado common law governs the parties' disputes. In addition, it misses the point that we render the limitation provision unconscionable not simply because it compels Zuver to waive any claim to punitive damages, but rather because the unilateral nature of the waiver is so "one-sided" and "overly harsh" that it excessively favors the employer here. See infra at 767.
[15] Airtouch also argues that Zuver's argument is irrelevant since it has not brought a claim for disclosure of confidential information and that under Washington law, she is not entitled to punitive damages for her WLAD claim. See Martini v. Boeing Co., 137 Wash.2d 357, 368, 971 P.2d 45 (1999) (holding that WLAD only provides for compensatory damages). This argument is not persuasive. Although Airtouch correctly notes that Zuver cannot obtain punitive damages in this action, Zuver argues that this court should refuse to enforce the entire arbitration agreement because this and other substantively unconscionable provisions pervade the entire agreement. Because of this, we must ascertain the conscionability of all of the provisions in this arbitration agreement. Accordingly, the substantive conscionability of the remedies provision is properly before this court.
[16] The concurrence/dissent asserts that Zuver's claim is properly framed as one seeking invalidity based simply on a lack of mutuality of obligations. Concurrence/dissent at 770. We do not agree. On the contrary, we are not concerned here with whether the parties have mirror obligations under the agreement, but rather whether the effect of the provision is so "one-sided" as to render it patently "overly harsh" in this case. See Schroeder, 86 Wash.2d at 260, 544 P.2d 20. The conclusion we reach here is aptly supported by the reasoning set forth in Armendariz.

[A] unilateral arbitration agreement imposed by the employer without reasonable justification reflects the very mistrust of arbitration that has been repudiated by the United States Supreme Court in Doctor's Associates, Inc. v. Casarotto, supra, 517 U.S. 681, 116 S.Ct. 1652, and other cases....
....
The unconscionable one-sidedness of the arbitration agreement is compounded in this case by the fact that it does not permit the full recovery of damages for employees, while placing no such restriction on the employer.
Armendariz, 24 Cal.4th at 120-21, 99 Cal.Rptr.2d 745, 6 P.3d 669.
[17] The concurrence/dissent speculates, based on its analysis of federal cases, that a waiver of punitive damages may be enforceable. See concurrence/dissent at 771 n. 4. However, this does not address the issue raised in this case.

The concurrence/dissent cites to cases dealing with punitive damages in the context of arbitration, none of which suggests a result contrary to the one we reach today. The principle United States Supreme Court case cited, Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), holds, based on principles of contract interpretation, that an arbitration agreement provision explicitly allowing for punitive damages should be enforced. Id. at 61-64, 115 S.Ct. 1212. It does not address the situation, as here, where one party alone is foreclosed from seeking punitive damages.
Likewise, Judge Posner's eye-catching rhetoric asserting parties to contract could agree to any arbitration procedure short of a hearing in front of "`a panel of three monkeys,'" which the concurrence/dissent finds availing, is similarly not on point here. See concurrence/dissent at 771 n. 4 (quoting Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 709 (7th Cir.1994)). While the concurrence/dissent attempts to imply that Baravati supports its proposition, it does not deal with the situation where one party is compelled by the terms of an agreement to waive a right to punitive damages while the other party maintains such a right. On the contrary, in admitted dicta, it addresses whether both parties could potentially make such a waiver. Baravati, 28 F.3d at 709 (stating as qualification that "[t]his disagreement does not bear directly on the present case"). In fact, the Seventh Circuit's holding is limited to affirming an arbitrator's award of punitive damages under the appropriate choice of law provision. Id. at 711.
Finally, the Eleventh Circuit quote, that the FAA "would not override a clear provision in a contract prohibiting arbitrators from awarding punitive damages," is similarly dictum that again fails to support the concurrence/dissent's position. Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1387 n. 16 (11th Cir.1988). Again, Bonar was not faced with the unilateral waiver issue we are presented with here. As such, these cases provide limited persuasive guidance.
[18] While the concurrence/dissent asserts that our conclusion here "opens the door" to claims of substantive unconscionability "whenever only one party to an employment arbitration agreement is constrained under one term of the agreement," see concurrence/dissent at 770, that is simply not the case. Rather, future litigants must show, as was done in this circumstance, that the disputed provision is so "one-sided" and "overly harsh" as to render it unconscionable.
[19] This provision states,

"[i]f any party hereto files a judicial or administrative action asserting claims subject to this arbitration provision, and another party successfully stays such action and/or compels arbitration of such claims, the party filing said action shall pay the other party's costs and expenses incurred in seeking such stay and/or compelling arbitration, including reasonable attorneys' fees."
CP at 36-37.
[20] Relying on Saletic v. Stamnes, 51 Wash.2d 696, 321 P.2d 547 (1958), Zuver argues that the unconscionable provisions of her contract are not severable because she assented to all the provisions in the contract as a single whole. In Saletic, we stated:

"Whether a number of promises constitute one contract or more than one is to be determined by inquiring `whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out.'"
Id. at 699, 321 P.2d 547 (quoting United States v. Bethlehem Steel Corp., 315 U.S. 289, 298, 62 S.Ct. 581, 86 L.Ed. 855 (1942) (quoting 3 SAMUEL WILLISTON & GEORGE J. THOMPSON, WILLISTON ON CONTRACTS § 863 (rev. ed.1936))). Zuver's argument is not compelling. The parties here explicitly assented to a severability provision in their agreement and thus, intended that courts sever any unconscionable provisions.
[21] Zuver claims that pursuant to RCW 4.84.330, we should award her attorney fees if we deny Airtouch's motion to compel arbitration. However, since we enforce the remainder of the arbitration agreement, Zuver has no viable claim for attorney fees.

In a footnote in its brief, Airtouch also requests that we award it attorney fees incurred in connection with this appeal. See Br. of Resp't at 50 n. 38. Airtouch's request for attorney fees, however, fails to comply with RAP 18.1(b), which requires that "[t]he party must devote a section of its opening brief to the request for the fees or expenses." See Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 710 n. 4, 952 P.2d 590 (1998). Therefore, we also deny Airtouch's requests for attorney fees.
[1] The majority also invalidates the confidentiality provision of the arbitration agreement on unconscionability grounds.
[2] The Restatement also addresses the doctrine of "mutuality of remedy," under which courts will not order an equitable remedy unless it is available to both, stating: "the law does not require that the parties have similar remedies in case of breach, and the fact that specific performance or an injunction is not available to one party is not a sufficient reason for refusing [to apply] it to the other party." Restatement (Second) of Contracts § 363, cmt. c (1981).
[3] The term "mutuality of obligation" is to be distinguished from the requirement that the parties to a contract make mutual promises to each other, and the requirement that there be mutual assent to a contract. See Arthur M. Kaufman & Ross M. Babbitt, The Mutuality Doctrine in the Arbitration Agreements: The Elephant in the Road, 22 FRANCHISE L.J. 101, 102-03 (Fall 2002).
[4] Although the United States Supreme Court has not addressed the issue whether a waiver of punitive damages in an employment arbitration agreement is enforceable, its cases indicate that generally such a waiver may be enforceable. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (applying principles of contract interpretation to decide whether an arbitration contract precluded an award of punitive damages and concluding it did not); Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478-79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (observing that the FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms" and noting that arbitration under the FAA "is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit"). The Eleventh Circuit has said that the FAA "would not override a clear provision in a contract prohibiting arbitrators from awarding punitive damages." Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1387 n. 16 (11th Cir.1988). And the Seventh Circuit has reasoned that "short of authorizing trial by battle or ordeal or, more doubtfully, by a panel of three monkeys, parties can stipulate to whatever procedures they want to govern ... their disputes" and "surely can stipulate that punitive damages will not be awarded"). Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 709 (7th Cir.1994).
[5] Another case cited by Zuver, Parrett v. City of Connersville, Indiana, 737 F.2d 690 (7th Cir.1984), does not involve the issue raised in this case  whether an arbitration clause barring a party from punitive damages is substantively unconscionable  but instead involved a due process challenge.