[No. 37825. Department Two. February 3, 1966.]

ELLA MAGDALEN CONRAD, *Respondent*, v. LAKEWOOD GENERAL HOSPITAL *et al.*, *Respondents*, ROBERT P. CRABILL *et al.*, *Appellants.*

ELLA MAGDALEN CONRAD, *Respondent*, v. LAKEWOOD GENERAL HOSPITAL *et al.*, *Respondents*, LOUIS T. HOYER, JR., M.D., *et al.*, *Appellants.**

*Reported in 410 P.2d 785.

*Lycette, Diamond & Sylvester* and *Earle W. Zinn*, for appellants Crabill.

*Alan R. Billett*, for appellants Hoyer.

*Roller, Barker & Turco*, by *J. J. Roller*, for respondent.

FINLEY, J.—A hemostat is a metal, scissor-like surgical instrument. The device is used by surgeons to check bleeding in the operative field by compressing the tissue or bleeding blood vessels. The plaintiff herein, Mrs. E. M. Conrad, underwent surgery for a malfunctioning gall bladder on June 21, 1963. During the course of the operation, several hemostats were used by the surgeon and his assistant to clamp off blood vessels in the area in which the surgeon and his assistant were working. Unfortunately, one hemostat—not insignificant in size, being approximately 5½ inches in

length and 2½ inches in width—was left in the plaintiff's abdominal cavity after the surgical incision was closed. Mrs. Conrad enjoyed an otherwise uneventful and normal post-operative recovery until the morning of August 7, 1963. At that time she suffered severe nausea and abdominal cramping. X-rays disclosed the presence of the heretofore undiscovered hemostat, necessitating a second operation to remove the instrument from her abdomen. In order to extract the hemostat, the same surgeon and assistant who performed the initial gall bladder operation were forced also to remove 14 inches of her small intestine.

Mrs. Conrad subsequently commenced an action against: (1) Dr. Louis T. Hoyer, the surgeon in charge of both operations, (2) Dr. Robert P. Crabill, the general practitioner who served as Dr. Hoyer's assistant, and (3) the Lakewood General Hospital, where the operation was performed. Upon trial to a jury, the hospital was exonerated, and a verdict was rendered against both the surgeon and the general practitioner in the sum of $12,500. The defendant doctors have appealed separately. There is no appeal as to the verdict for the hospital.

The plaintiff's theory of relief was relatively unique in that her pleadings and proof at the trial focused upon simple negligence rather than malpractice. In other words, she did not claim that the appellant doctors had deprived her of the beneficial effects of proper treatment. Instead, she urged that the doctors were negligent in that they failed to keep a count of the instruments used in the original gall bladder surgery, and, as a result, one hemostat was enclosed in the plaintiff's abdominal cavity at the termination of the operation.

Bluntly stated, this appeal is nothing more than an attempt by Dr. Crabill to make Dr. Hoyer, as the surgeon in charge, solely liable; and, correlatively, Dr. Hoyer attempts to transfer liability to Dr. Crabill alone. But the clouds of dust stirred by this intramural battle have failed to obfuscate one key consideration: it is patent that the hemostat was not *intentionally* left in the plaintiff's body. It is only logical to infer that the instrument was *inad-*

*vertently*, albeit allegedly negligently, sewed up inside the plaintiff's abdominal cavity. There should be no question in Washington as to whether such inadvertence, in and of itself, constitutes negligent conduct. In *McCormick v. Jones*, 152 Wash. 508, 278 Pac. 181, 65 A.L.R. 1019 (1929), we held that a surgeon was negligent as a matter of law in introducing a sponge and inadvertently leaving it in the plaintiff's body on closing the incision. Thus, *the question posed here is simply whether or not more than one doctor's conduct can or should be made legally responsible for creating the risk that a surgical instrument would be left in the plaintiff's body.* We are convinced that the trial court was warranted in submitting the case to the jury in such a manner that it *could conclude* that both doctors should be liable. In this respect, it should be noted that the jury was directed to find against Dr. Hoyer, but the question of Dr. Crabill's alleged negligence was submitted to the jury.

■ Essentially, Dr. Crabill's theory is that Dr. Hoyer was solely responsible for making the decision to close the surgical wound; therefore, he, alone, should be made liable for the resultant damages to the plaintiff. Dr. Crabill concludes that the trial court should have directed a verdict in his favor. We cannot agree. Even though appellant Crabill is only a general practitioner, he had certain responsibilities in the operative field as an assistant to the surgeon throughout the operation. Dr. Crabill helped expose the operative site at the commencement of the operation. He helped the surgeon stop the bleeding in the incision area by clamping blood vessels with hemostats while Dr. Hoyer tied sutures around them. In general, the assistant is to keep the operating field clear during the entire course of the operation; thus, his attention is directed to the incision area throughout the operation.

With respect to the liability of two physicians independently engaged, the rule is found in 85 A.L.R.2d 889, where, at page 893, it is stated:

Physicians independently employed or acting independently in the case are not vicariously liable, unless the one observed, *or, in the exercise of ordinary care,*

*should have observed,* the wrongful act of the other. On the other hand, vicarious liability has been recognized where the physicians are jointly employed or acting jointly in the case, or are in a partnership for the practice of medicine, unless the wrongful act was outside the scope of the firm's business.

The difficulty, of course, with this particular fact pattern is that the plaintiff was unable to prove which doctor neglected to extract a hemostat inserted by one of them to stop the bleeding. However, it would seem to be an unduly harsh and an unnecessary burden to require a surgical patient—who was unconscious at the time one of two doctors failed to remove a hemostat—to prove which doctor was the negligent actor. Instead, it seems to us that we have an "either-or" type proposition. Either Dr. Crabill negligently failed to remove a hemostat which he was utilizing —making Dr. Hoyer negligent in failing to observe such conduct—or vice versa.

Appellant Dr. Hoyer asserts that it was error for the trial court to direct a verdict against him on the grounds that "where as here more than one surgeon is working in the operative field, and where as here either of the surgeons could have left the hemostat in the plaintiff's body, the trial court should leave for the jury's determination whether one or both of the defendants are liable for the plaintiff's condition." We see no policy or legal reason to overrule *McCormick v. Jones, supra,* wherein we held surgeons to be negligent as a matter of law when surgical instruments are inadvertently left in a patient's body. Furthermore, we disagree with appellant Dr. Hoyer's statement that "either of the *surgeons* could have left the hemostat in the plaintiff's body." Either the *surgeon in charge* of the operation (Dr. Hoyer) or the *general practitioner* who was acting as his *assistant* (Dr. Crabill), or both, forgot the hemostat. But it was Dr. Hoyer's decision to close up the surgical incision, and he testified that it was his responsibility to ascertain that the operative field was cleared of foreign objects before sewing up the wound. Thus, the trial court was correct in instructing the jury to return a verdict against Dr. Hoyer.

■ The remainder of both appellants' assignments of error are directed to alleged error of the trial court in failing to give requested instructions. Dr. Crabill requested an instruction to the effect that he should only be held to the standard of care of a general practitioner and not to the standard of skill of a specialist in surgery. Under the circumstances herein, we see no reason why such an instruction should be given. In actuality, plaintiff's theory of relief is that any doctor—be he surgeon, general practitioner, or whatever—participating in an operation will make certain that any instruments inserted into the body of the patient are removed. In addition, the jury could have properly concluded that Dr. Crabill—as a mere general practitioner —would still be negligent for failing to observe the wrongful acts of the surgeon in charge of the operation when he knew, or should have known, that such acts created a risk of harm to the plaintiff.

Dr. Crabill also requested an instruction to the effect that the responsibility for a count of the instruments would be Dr. Hoyer's unless he delegated that responsibility to Dr. Crabill. Again, Dr. Crabill would be liable irrespective of which doctor had the responsibility for a count (there is no count of surgical instruments by doctors or nurses at Lakewood General Hospital) if he negligently failed to remove a hemostat which he inserted in the plaintiff's abdomen— or if he failed to observe that Dr. Hoyer negligently misplaced such an instrument or was careless in examining the operative field before closing the wound.

■ Lastly, Dr. Crabill urges that the trial court erred in failing to give his requested instruction specifically excluding from the jury's consideration punitive damages and damages for the discomfort and disability which plaintiff would normally have had or suffered from the original gall bladder operation. No citation of authority is required for the principle that Washington does not allow punitive damages; hence, the trial court could properly have given such an instruction. However, there is no showing by the appellant that the respondent asked for or attempted to prove grounds for punitive damages. We think that the

determination of whether or not to give a punitive damages instruction should rest in the discretion of the trial judge, and we can surmise no abuse of that discretion where, as here, respondent is unable to demonstrate that the jury verdict of $12,500 is so excessive as to warrant an inference that the jury's verdict was not an objective evaluation. Likewise, the plaintiff made no attempt to include damages for pain and suffering normally incident to a gall bladder operation. In fact, the testimony at the trial overwhelmingly demonstrated that Mrs. Conrad was progressing normally until the evening of August 6, 1963, when severe cramps and nausea led to the discovery of the hemostat in her body.

█ The only remaining assignment of error for discussion is advanced by Dr. Hoyer respecting an instruction requested but not given, which reads as follows:

> You are instructed that the court has determined as a matter of law that the plaintiff is not entitled to recover compensation for any alleged permanent injuries. The court does not mean to imply by this instruction that you should find either for the plaintiff or the defendant. However, if your verdict is for the plaintiff then you are instructed the plaintiff is only entitled to recover compensation for the pain, inconvenience and expense, if any, of the hemostat remaining in her body from June 21, 1963 to August 7, 1963 and for the pain, inconvenience and expense, if any, of the surgery of August 7, 1963 for the removal of the hemostat.

This instruction certainly would have been warranted if the trial court felt that the plaintiff's proof had amalgamated the pain, suffering, and disability, if any, from the original operation and the operation necessary in order to remove the hemostat. But the trial court apparently concluded, and we agree, that the testimony conclusively demonstrated that the plaintiff had almost totally recovered from the gall bladder operation when the bowel strangulation of August 7, 1963, led to the discovery of a metal surgical instrument (approximately 5½ inches by 2½ inches) in her abdominal cavity. Thus, the instruction was not necessary.

The judgment of the trial court entered on the jury verdict against both doctors is hereby affirmed for the reasons indicated herein.

ROSELLINI, C. J., DONWORTH and HAMILTON, JJ., and BARNETT, J. Pro Tem., concur.

*Reported in 410 P.2d 918.