[No. 47231-9. En Banc. October 29, 1981.]

LAURENCE D. BARR, *as Personal Representative, Appellant,* v. INTERBAY CITIZENS BANK OF TAMPA, FLORIDA, *Respondent.*

*Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern,* by *Ronald B. Leighton,* for appellant.

*Johnson, Lane & Gallagher,* by *Joanne Henry,* for respondent.

[As amended by order of the Supreme Court January 4, 1982.]

DOLLIVER, J.—This is an appeal from a trial court ruling which denied a motion that Florida law be applied to this case on the issue of punitive damages.

In January of 1977, Neumon Vann was in Tampa, Florida on business. He saw a 1975 Lincoln Continental for sale. Aware that a friend of his was looking for such a car, Vann inquired about and ultimately purchased the Continental from its owner, R. D. Young. He paid $6,650 with a check payable to the Exchange Bank of West Shore, which bank held a lien on the automobile. By agreement, as soon as Vann's check cleared his bank, the Exchange Bank of West Shore was to send clear title to him. Instead, the bank sent the title to Young.

In the meantime, Vann drove the automobile from Florida to California where his friend, George Barr, was visiting from Tacoma, Washington. Barr looked the car over and decided to buy it. On February 18, 1977, Barr gave Vann a check for $4,000, together with his 1974 Ford LTD. Vann explained the situation regarding the title certificate and gave his assurance that the title would be in Tacoma before Barr returned there, but upon Barr's return the certificate had not arrived.

During the ensuing months, while Barr attempted to secure the title, Young had taken out a loan from the Interbay Citizens Bank of Tampa, Florida, and given title to the car as collateral for the loan. In time, Interbay Citizens Bank initiated repossession of the car by contacting an attorney in Las Vegas, the residence of Vann and apparently where the bank believed the car to be located. The

attorney in Las Vegas contacted persons in Las Vegas for purposes of repossession. After discovering the car was located in Tacoma, these same persons then took the car from Barr and returned it to Nevada. Later the parties agreed the car would be returned to Barr in Tacoma by September 23, 1977, but the car was not delivered in Tacoma until October 10, 1977. By this time he had purchased another car and refused to accept the Lincoln Continental when it arrived.

On January 19, 1978, the plaintiff filed an action in Pierce County Superior Court alleging damages for conversion, intentional infliction of emotional distress, and outrageous conduct on the part of the defendant, Interbay Citizens Bank of Tampa, Florida. Defendant answered denying the material allegations in the complaint.

On November 22, 1978, plaintiff brought a motion seeking an order that Florida law on the issue of punitive damages would apply to the case. This motion was denied by the court. At trial, all claims of the plaintiff, except that for punitive damages, were submitted to the jury, which returned a verdict in favor of the plaintiff on the 19th day of May, 1979, in the amount of $36,816.

Defendant and plaintiff filed timely notices of appeal and cross appeal. The appeal was dismissed, leaving only the cross appeal (which pertains to the absence of a jury instruction on punitive damages) to be resolved. We accepted transfer of this case from the Court of Appeals.

Initially, defendant claims lack of jurisdiction by the trial court in that plaintiff failed to comply with RCW 4.28.185(4), relative to personal service outside the state. As recognized by the comment of this court in granting the motion of plaintiff to transfer this matter from the Court of Appeals:

> Barr was originally the respondent–cross–appellant as the initial notice of appeal in this matter was filed by the opposing party, Interbay Citizens Bank of Tampa, Florida (Bank). The Bank has since abandoned its appeal, however, and thus is now before the court strictly in the

capacity of a respondent.

We concur in this view that defendant waived any question of insufficiency of process or service of process. CR 12(b)(4), (5).

Nevertheless, the bank argues this is a jurisdictional question which can be raised at any time and that since plaintiff did not comply with the statute the judgment of the trial court is void.

RCW 4.28.185(4) reads:

Personal service outside the state shall be valid only when an affidavit is made and filed to the effect that service cannot be made within the state.

In fact, affidavits were submitted on behalf of defendant which stated defendant was not licensed to do business in Washington, had no officers, agents or employees in Washington, transacts no business in Washington of any sort and that all of its employees are citizens of Florida. We have held that "substantial and not strict compliance is sufficient where a proper affidavit is filed, although late, where it appears that no injury was done the defendant as a result of the late filing." *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 472, 403 P.2d 351 (1965); *Whitney v. Knowlton,* 33 Wash. 319, 74 P. 469 (1903). No injury is claimed here nor is there a showing the long-arm statute was being used to burden or harass defendant.

The logical conclusion from the language in the affidavits is that there were no authorized personnel in Washington for plaintiff to serve. The affidavits are thus, in the language of the statute, "to the effect that service cannot be made within the state." As they were filed before judgment, the affidavits were timely. *Schell v. Tri-State Irrigation,* 22 Wn. App. 788, 591 P.2d 1222 (1979). There is no requirement in the statute that the affidavits must be filed by plaintiff. There has been substantial compliance with RCW 4.28.185(4).

The main issue to be decided is whether the trial court was required to apply the law of Florida to plaintiff's claim for punitive damages. The courts of Washington and Flo-

rida have made conflicting policy decisions with respect to the allowance of punitive damages. Under the law of this state, punitive damages are not allowed unless expressly authorized by the legislature. *Steele v. Johnson,* 76 Wn.2d 750, 458 P.2d 889 (1969); *Maki v. Aluminum Bldg. Prods.,* 73 Wn.2d 23, 436 P.2d 186 (1968); *Conrad v. Lakewood Gen. Hosp.,* 67 Wn.2d 934, 410 P.2d 785, 10 A.L.R.3d 1 (1966). Under the law of Florida, however, punitive damages may be awarded. *Miami Beach Lerner Shops, Inc. v. Walco Mfg. of Fla., Inc.,* 106 So. 2d 233 (Fla. Dist. Ct. App. 1958).

In determining the appropriate choice of law, this court has rejected the lex loci delicti choice–of–law rule and has adopted the most significant relationship rule for contracts and tort choice–of–law problems. *Johnson v. Spider Staging Corp.,* 87 Wn.2d 577, 555 P.2d 997 (1976); *Potlatch No. 1 Fed. Credit Union v. Kennedy,* 76 Wn.2d 806, 810, 459 P.2d 32 (1969); *Baffin Land Corp. v. Monticello Motor Inn, Inc.,* 70 Wn.2d 893, 425 P.2d 623 (1967).

This rule was articulated by the court in *Johnson v. Spider Staging Corp., supra* at 580–81, as follows:

> The Restatement (Second) of Conflict of Laws § 6 (1971), with which we are in accord, developed this new approach, and section 145 sets out the general principles which apply to a tort choice–of–law problem:
> (1) The rights and liabilities of the parties with respect to an issue in tort are *determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.*
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>   (a)   the place where the injury occurred,
>   (b)   the place where the conduct causing the injury occurred,
>   (c)   the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>   (d)   the place where the relationship, if any, between

the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue. (Italics ours.) *Accord,* Restatement (Second) of Conflict of Laws §§ 175–80 (1971). Our approach is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found.

In the case before us, Washington is the place where the injury occurred and where plaintiff resided and was domiciled. Florida is the place of incorporation and the principal place of business of defendant as well as the place where the conduct occurred causing the injury. As has been stated, there were other significant contacts in Nevada. However, since plaintiff neither contended Nevada law should be applied nor presented that law to the court, it is presumed Nevada law is the same as Washington law. *International Tracers of America v. Estate of Hard,* 89 Wn.2d 140, 570 P.2d 131 (1977), *cert. denied,* 435 U.S. 1004, 56 L. Ed. 2d 386, 98 S. Ct. 1873 (1978).

█ Which state has the most significant relationship? The Restatement (Second) of Conflict of Laws § 171, comment *d,* states: "The law selected by application of the rule of § 145 determines the right to exemplary [punitive] damages." Under usual circumstances, we might follow the statement in section 145, comment *c:*

> If the primary purpose of the tort rule involved is to deter or punish misconduct, as may be true of rules permitting the recovery of damages for alienation of affections and criminal conversation, the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship . . . On the other hand, when the tort rule is designed primarily to compensate the victim for his injuries, the state where the injury occurred, which is often the state where the plaintiff resides, may have the greater interest in the matter.

Restatement (Second) of Conflict of Laws § 145, comment *c,* at 416 (1971).

In this case, however, the comments after the general

rule are important:

> This factor must not be overemphasized, however. To some extent, at least, every tort rule is designed both to deter other wrongdoers and to compensate the injured person. Undoubtedly, the relative weight of these two objectives varies somewhat from rule to rule, and in the case of a given rule it will frequently be difficult to tell which of these objectives is the more important.

Restatement (Second) of Conflict of Laws § 145, comment *c,* at 416 (1971).

Although Florida surely has an interest in applying punitive damages, under the circumstances in this case where it is apparent the immediate conduct causing the injury was by the Nevada agent of defendant, we believe the interest of Florida is subordinate to that of Washington. The arguments for punitive damages have generally been delineated as these four: compensation, punishment and deterrence, revenge, and promotion of justice. Long, *Punitive Damages: An Unsettled Doctrine,* 25 Drake L. Rev. 870 (1976).

In Florida, the rationale is that of punishment and deterrence:

> Punitive or exemplary damages are awarded as punishment to a defendant and as a warning and example to deter him and others from committing similar offenses in the future.

*Miami Beach Lerner Shops, Inc. v. Walco Mfg. of Fla., Inc., supra* at 236. The interest in Florida in providing an example for deterrence would not be furthered when the actual conduct and the acts which might warrant punitive damages were restricted to Nevada and Washington.

■ Since 1891, in an unbroken line of cases, it has been the law of this state that punitive damages are not allowed unless expressly authorized by the legislature. *Maki v. Aluminum Bldg. Prods., supra; Spokane Truck & Dray Co. v. Hoefer,* 2 Wash. 45, 25 P. 1072 (1891). Contrary to the view expressed in *Kammerer v. Western Gear Corp.,* 27 Wn. App. 512, 522, 618 P.2d 1330 (1980), although some narrow exceptions have been made by the legislature: RCW 19.86-

.090 (consumer protection act); 19.52.030 (usury); 64.12.030 (trespass to trees, shrubs and timber), punitive damages are contrary to public policy.

Beginning with *Spokane Truck & Dray Co. v. Hoefer, supra,* a number of reasons have been given by this court for rejecting punitive damages. All of them need not be enunciated here. In the context of this case, the argument that compensatory damages fully compensate the plaintiff for all injuries to person or property, tangible or intangible, is particularly in point. As the court observed in *Spokane Truck & Dray Co. v. Hoefer, supra* at 52–53:

> Exclusive of punitive damages, the measure of damages as uniformly adopted by the courts and recognized by the law is exceedingly liberal towards the injured party. There is nothing stinted in the rule of compensation. The party is fully compensated for all the injury done his person or his property, and for all losses which he may sustain by reason of the injury, in addition to recompense for physical pain, if any has been inflicted. But it does not stop here; it enters the domain of feeling, tenderly inquires into his mental sufferings, and pays him for any anguish of mind that he may have experienced. Indignities received, insults borne, sense of shame or humiliation endured, lacerations of feelings, disfiguration, loss of reputation or social position, loss of honor, impairment of credit, and every actual loss, and some which frequently border on the imaginary, are paid for under the rule of compensatory damages. The plaintiff is made entirely whole.

We hold in this case the state of most significant relationships on the imposition of punitive damages is Washington. The trial court was correct in denying plaintiff's motion to apply the Florida law of punitive damages in this case.

The trial court is affirmed.

UTTER and DIMMICK, JJ., and COCHRAN and HAMILTON, JJ. Pro Tem., concur.

ROSELLINI, J. (concurring)—I concur with the majority

opinion on the basis that Washington law applies, as the most significant relationship occurred in this state.

I would further hold that the compensatory damages of $36,816 were sufficient to punish the defendant, and will serve as a warning and as an example to deter others from committing similar offenses in the future.

WILLIAMS, J., concurs with ROSELLINI, J.

STAFFORD, J. (concurring)—I concur for the reasons stated in my dissent in *Kammerer v. Western Gear Corp.,* 96 Wn.2d 416, 635 P.2d 708 (1981).

BRACHTENBACH, C.J., concurs with STAFFORD, J.

Reconsideration denied January 4, 1982.