# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE AUG 1 5 2013



CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on Aug 15, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| BARBARA BROWN and CINDY HIETT,<br><br>Respondents,<br><br>v.<br><br>MHN GOVERNMENT SERVICES, INC.; HEALTH NET, INC., and MHN SERVICES d/b/a MHN SERVICES CORPORATION, a Washington Corporation,<br><br>Appellants. | No. 87953-2<br><br>En Banc<br><br>Filed AUG 1 5 2013 |

J.M. JOHNSON, J.—The narrow question before us is whether an arbitration agreement signed by respondents Barbara Brown and Cindy Hiett is permeated with unconscionability and therefore unenforceable under

California law.[1]  We hold that the forum selection and punitive damages provisions are not unconscionable and that the arbitrator selection, statute of limitations, and fee shifting provisions are unconscionable.  The unconscionable taint cannot be removed through severance.  We hold that because the arbitration agreement is permeated with unconscionability, it is unenforceable.  We note that our holdings are limited to the facts of this case because we must apply California law.  We affirm the trial court's September 30, 2011, order granting respondents Brown and Hiett's motion to quash the demand for arbitration and denying appellant MHN Government Services Inc.'s motion to compel arbitration.

FACTS AND PROCEDURAL HISTORY

In this case, we are asked to consider whether a particular arbitration agreement is enforceable.  The underlying action concerns, in part, Brown and Hiett's claims under the Washington Minimum Wage Act, chapter 49.46 RCW.  Specifically, they allege that they were unlawfully misclassified as independent contractors and thus were not paid the appropriate overtime rate for all hours worked.

---

[1] The agreement in question contains a California choice of law provision.  This is discussed in detail, *infra* p. 4.

Brown and Hiett are two mental health professionals who were recruited by MHN to take short term positions providing counseling for military personnel and their families. In mid-2008, MHN individually mailed Brown and Hiett letters inviting each to apply for a military and family life consultant position. Each filled out and submitted the paperwork that requested general background information. Brown and Hiett were then sent contracts in the mail labeled "Provider Services Task Order Agreement" (PSTOA). Clerk's Papers (CP) at 33-34; 53-54. Each then signed and returned the PSTOA. CP at 43-52; 63-71. The PSTOA contains a "Mandatory Arbitration" provision, the enforceability of which is at issue before us. CP at 49.

On June 14, 2011, Brown and Hiett filed a complaint in Pierce County Superior Court, alleging state law wage claims on behalf of themselves and a proposed class. CP at 1-10. On September 30, 2011, several motions were made before Judge Edmund Murphy in superior court. MHN moved to compel arbitration and stay the proceedings, and Brown and Hiett moved to quash the demand for arbitration. Verbatim Report of Proceedings (VRP) at 2. Brown and Hiett claimed that five specific provisions of the arbitration agreement are unconscionable: the forum selection, statute of limitations, arbitrator selection, fee shifting, and punitive damages provisions. Judge

3

Murphy denied the motion to compel arbitration and granted the motion to quash the demand for arbitration. VRP at 44. This ruling was based on a finding of both procedural unconscionability (VRP at 40) and that all five contested provisions of the arbitration agreement are substantively unconscionable (VRP at 41-44). The court decided against severing the provisions it found unconscionable. VRP at 43.

MHN sought review in Division Two of the Court of Appeals of the trial court's order. Judge Worswick certified this case for transfer to this court pursuant to RCW 2.06.030. On October 3, 2012, the Supreme Court commissioner issued a ruling accepting certification.

The PSTOA contains a choice of law provision that states that it "shall be governed by and construed according to the laws of the State of California." CP at 49. We generally enforce choice of law provisions. *McKee v. AT&T Corp.*, 164 Wn.2d 372, 384, 191 P.3d 845 (2008) (citing *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 695-96, 167 P.3d 1112 (2007)). We disregard the choice of law provision and apply Washington law if the following three prongs are met: (1) without the provision, Washington law would apply; (2) the chosen state's law violates a fundamental public policy of Washington; and (3) Washington's interest in the determination of the issue materially outweighs the chosen state's

4

interest. *Id.* (citing *Erwin*, 161 Wn.2d at 694-95).

The parties do not contest that California law applies to the construction of the PSTOA. California's unconscionability law does not violate Washington's public policy. We accordingly respect the choice of law provision and apply California law.

STANDARD OF REVIEW

Under California law, appellate courts review the question of arbitrability de novo. *Greenspan v. Ladt, LLC*, 185 Cal. App. 4th 1413, 1437, 111 Cal. Rptr. 3d 468 (2010). Where, as here, there are no relevant disputed facts, contract interpretation is also reviewed de novo. *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1138, 76 Cal. Rptr. 3d 585 (2008). The party opposing arbitration bears the burden of showing that the agreement is not enforceable. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000). Under California law, the trial court's ruling on severability is reviewed for an abuse of discretion. *In re Marriage of Facter*, 212 Cal. App. 4th 967, 985-86, 152 Cal. Rptr. 3d 79 (2013). It is proper to decline to sever unconscionable provisions if the agreement is permeated with unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 124, 6 P.3d 669, 99 Cal. Rptr. 2d 745 (2000) (holding that the

trial court did not abuse its discretion in concluding that the arbitration agreement was permeated by an unlawful purpose when there were two unconscionable provisions). Such permeation can be indicated when there is no single provision a court can strike to remove the unconscionable taint. *Id.* at 124-25.

ANALYSIS

A threshold dispute as to whether an arbitration agreement is unconscionable is ordinarily a decision for the court and not the arbitrator. *Hartley v. Superior Court*, 196 Cal. App. 4th 1249, 1253-56, 127 Cal. Rptr. 3d 174 (2011) (holding that an arbitration provision in a contract was not clear and unmistakable in stating that the question of arbitrability was subject to arbitration, so the court could not compel arbitration on the threshold issue of the agreement's unconscionability). Here, the issue of arbitrability has not been clearly and unmistakably delegated to the arbitrator on the face of the contract. Therefore, it is proper for us to determine the enforceability of the arbitration agreement.

The parties disagree about the application of *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011), to the general contract defense of unconscionability under state law. In *Concepcion*, customers brought a putative class action against AT&T,

alleging that the company's offer of a free phone to anyone who signed up for cell phone service was fraudulent because the company charged sales tax on the retail value of the phone. The United States Supreme Court held that the Federal Arbitration Act (FAA), 9 U.S.C. § 2, preempts California's judicial rule concerning the unconscionability of class action arbitration waivers in consumer contracts. *Concepcion*, 131 S. Ct. at 1753. Although the California Supreme Court has not specifically addressed the application of *Concepcion* to its unconscionability law, we note that review has been granted in *Sanchez v. Valencia Holding Co.* in which the court may clarify this issue. 201 Cal. App. 4th 74, 135 Cal. Rptr. 3d 19 (2011), *superseded by* 272 P.3d 976, 139 Cal. Rptr. 3d 2 (2012).

MHN argues for a broad reading of *Concepcion*, asserting that courts cannot rely on general unconscionability principles if they interfere with the fundamental attributes of arbitration such as its informality and speed. Brown and Hiett advocate for a narrower reading that would not impair the power of state courts to refuse enforcement of agreements under generally applicable unconscionability principles. We agree with this narrower reading of *Concepcion*.

In *Concepcion*, the United States Supreme Court interpreted the

FAA's savings clause[2] to mean that arbitration agreements can be invalidated by "'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 1746 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)). Accordingly, state rules specific to arbitration that interfere with the purposes of the FAA are preempted. Because California's unconscionability principles relevant to this case apply equally to litigation and arbitration, we apply them to the five contested provisions of the PSTOA.

A.    California's Unconscionability Standard

Under California law, courts may choose not to enforce any contract found "'to have been unconscionable at the time it was made,' or may 'limit

---

[2] The validity of the arbitration agreement in *Concepcion* turned on the FAA's savings clause. 9 U.S.C. § 2 states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*

(Emphasis added.)

the application of any unconscionable clause.'" *Id.* at 1746 (quoting CAL. CIV. CODE ANN. § 1670.5(a)). Unconscionability requires both a procedural and substantive element, "but 'they need not be present in the same degree' and are evaluated on '"a sliding scale."'" *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev., LLC,* 55 Cal. 4th 223, 282 P.3d 1217, 1232, 145 Cal. Rptr. 3d 514 (2012) (quoting *Armendariz,* 24 Cal. 4th at 114). The procedural element concerns the manner in which the contract was negotiated, focusing on oppression or surprise. Procedural oppression generally concerns an inequality of bargaining power and an absence of real negotiation or meaningful choice. *Morris v. Redwood Empire Bancorp,* 128 Cal. App. 4th 1305, 1319, 27 Cal. Rptr. 3d 797 (2005). Procedural surprise generally relates to whether the challenged term is hidden in a standardized form or beyond the reasonable expectations of the weaker party. *Id.* at 1321. Substantive unconscionability concerns overly harsh or one-sided results. *Armendariz,* 24 Cal. 4th at 114.

B.    <u>Procedural Unconscionability</u>

The arbitration agreement at issue is procedurally unconscionable. While there does not appear to be procedural oppression, ambiguity concerning which set of American Arbitration Association (AAA) rules applies presents procedural surprise.

The arbitration agreement lacks procedural oppression. The arbitration provision was in the same typeface, font, and size as the rest of the PSTOA and had a bold, underlined heading labeled "Mandatory Arbitration." Brown and Hiett had time to read and consider the agreement before signing. Both are sophisticated bargaining parties. Brown is a licensed clinical social worker and a sole proprietor of her business. CP at 99. Likewise, Hiett represents herself as a marriage family therapist. CP at 109. They are highly educated professionals who voluntarily entered into an agreement to arbitrate.

However, the arbitration agreement contains procedural surprise due to its lack of clarity regarding which set of AAA rules would govern the arbitration. The arbitration agreement provides, in part, "The parties agree that any controversy or claim arising out of or relating to this Agreement . . . or the breach thereof, whether involving a claim in tort, contract or otherwise, shall be settled by final and binding arbitration in accordance with the provisions of the American Arbitration Association." CP at 49. The AAA has upward of 20 sets of both industry-specific and general categories of rules. Generally, arbitration agreements specify which rules will apply or the parties agree on a set of rules if the case clearly fits in one category or another. Here, it is unclear whether the parties would arbitrate

under the employment rules or commercial rules, particularly given Brown and Hiett's underlying claim that they were employees misclassified as independent contractors.

MHN has changed its position several times regarding which set of AAA rules is appropriate. This further supports Brown and Hiett's argument that the ambiguity in the arbitration agreement has resulted in procedural surprise. In the opposition to plaintiffs' motion to quash arbitration, MHN cites specifically to the employment rules. CP at 141. However, in the appellate briefing, MHN contends that "it is evident" that the commercial rules, not the employment rules, should apply. Br. of Appellants at 7 n.1. Where MHN, the drafter of the agreement, has failed to maintain a consistent interpretation of the agreement's terms, we recognize that the ambiguity concerning the AAA rules has presented procedural surprise for Brown and Hiett.

This finding is supported by California case law that suggests that procedural unconscionability can be present where rules are referenced in an arbitration agreement but not attached. *See, e.g., Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406, 7 Cal. Rptr. 3d 418 (2003) (holding that it was oppressive to reference the Better Business Bureau rules but not attach them to the agreement because the customer must go to another source to

determine the impact of what he is signing). The California Supreme Court has granted review on two cases that found arbitration agreements unconscionable in part because they did not attach copies of the applicable AAA rules. *Wisdom v. AccentCare, Inc.*, 202 Cal. App. 4th 591, 136 Cal. Rptr. 3d 188, *superseded by* 273 P.3d 513, 139 Cal. Rptr. 3d 315 (2012); *Mayers v. Volt Mgmt. Corp.*, 203 Cal. App. 4th 1194, 137 Cal. Rptr. 3d 657, *superseded by* 278 P.3d 1167, 137 Cal. Rptr. 3d 657 (2012).

C.    Substantive Unconscionability

1.    Forum Selection Provision

The arbitration agreement provides, in part, "The arbitration shall be conducted in San Francisco, California." CP at 49. Brown and Hiett argue that this provision is substantively unconscionable because anybody wishing to arbitrate a claim against MHN would have to locate local counsel and travel to California at great personal expense. They claim that this provision is one-sided in that those signing the agreements would be less likely to have resources to travel and obtain local counsel than MHN. We disagree and find that the forum selection provision is not substantively unconscionable.

Forum selection provisions in arbitration agreements are evaluated for whether the term is "unduly oppressive." *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909, 104 Cal. Rptr. 2d 888 (2001). In *Bolter*, the court

severed an unconscionable arbitration agreement clause selecting Utah as the forum. After reviewing extensive declarations from the parties concerning their financial circumstances, family situations, and business arrangements, the court recognized that "[u]nder the circumstances, the 'place and manner' terms are unduly oppressive." *Id.* Here, the record is devoid of similar declarations concerning the parties' circumstances. Brown and Hiett have not alleged similar facts concerning the hardship of arbitrating in California. We accordingly find that the forum selection provision is not substantively unconscionable.

2. Punitive Damages Provision

The arbitration agreement provides, in part, "The arbitrator shall have no authority to make material errors of law or to award punitive damages or to add to, modify or refuse to enforce any agreements between the parties." CP at 49. Brown and Hiett claim that the provision limiting punitive damages deprives them of their right to statutory double damages under RCW 49.52.070.[3] Under that provision, employees can be awarded statutory double damages from an employer who willingly and intentionally paid them less than is required by law. Following the United States

---

[3] While the construction of the PSTOA is controlled by California law, Brown and Hiett have asserted state law claims under Washington law.

Supreme Court's lead in *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 123 S. Ct. 1531, 155 L. Ed. 2d 578 (2003), we find that the punitive damages provision is not substantively unconscionable.

In *PacifiCare*, the Court was asked to decide whether a party could be compelled to arbitrate claims arising under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, even though the arbitration agreement's limitation on punitive damages could be construed to limit the arbitrator's authority to award statutory treble damages. 538 U.S. at 402. The Court ultimately concluded that addressing the question of whether the arbitration agreement would preclude RICO treble damages would be premature. *Id.* at 404.

The Court noted that "[o]ur cases have placed different statutory treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards." *Id.* at 405. The Court further recognized that

> [i]n light of our case law's treatment of statutory treble damages, and given the uncertainty surrounding the parties' intent with respect to the contractual term "punitive," the application of the disputed language to respondents' RICO claims is, to say the least, in doubt. And *Vimar* instructs that we should not, on the basis of "mere speculation" that an arbitrator might interpret these ambiguous agreements in a manner that casts their enforceability into doubt, take upon ourselves the authority to decide the antecedent question of how the

14

ambiguity is to be resolved.

*Id.* at 406-07 (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 115 S. Ct. 2322, 132 L. Ed. 2d 462 (1995)).

Washington law is similarly unclear with respect to where RCW 49.52.070 lies on the spectrum between purely remedial and purely punitive. *See* RCW 49.52.070 (referring to the damages as "exemplary"); *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 158, 961 P.2d 371 (1998) (also noting the "exemplary" nature of the double damages provision); *Morgan v. Kingen*, 141 Wn. App. 143, 161-62, 169 P.3d 487 (2007) ("the [RCW 49.52.070] damages are exemplary damages, not *merely* compensatory. As exemplary damages, they are intended to punish and deter blameworthy conduct." (emphasis added) (footnote omitted)).

We follow the lead of the United States Supreme Court in *PacifiCare* and note that it would be premature to determine at this stage whether the punitive damages provision would limit Brown and Hiett's ability to collect statutory double damages under RCW 49.52.070. Accordingly, we find that the punitive damages provision is not substantively unconscionable.

3.     Statute of Limitations Provision

The arbitration agreement states, in part, "Arbitration must be initiated within 6 months after the alleged controversy or claim occurred by

15

submitting a written demand to the other party. The failure to initiate arbitration within that period constitutes an absolute bar to the institution of any proceedings." CP at 49. Under the Washington Minimum Wage Act, parties have three years to bring a claim. *Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*, 139 Wn.2d 824, 837, 991 P.2d 1126, 1 P.3d 578 (2000). Brown and Hiett assert that requiring parties to initiate arbitration within six months is substantively unconscionable because it limits their right to damages for violations occurring up to three years prior to their complaint. We agree and find that the statute of limitations provision is substantively unconscionable.

California authority suggests that a six-month statute of limitations clause in an arbitration agreement is substantively unconscionable where the underlying statute (here, the Washington Minimum Wage Act) provides a much longer period of time within which to assert a claim. Brown and Hiett cite to *Cuadra v. Millan*[4] in support of their argument that the statute of limitations provision would limit their recovery to the past six months' worth of wage claims:

> A cause of action for unpaid wages accrues when the wages first become legally due, i.e., on the regular payday for

---

[4] 952 P.2d 704, 17 Cal. 4th 855, 72 Cal. Rptr. 2d 687 (1998), *abrogated on other grounds by Samuels v. Mix*, 989 P.2d 701, 22 Cal. 4th 1, 91 Cal. Rptr. 2d 273 (1999)).

the pay period in which the employee performed the work; when the work is continuing and the employee is therefore paid periodically (e.g., weekly or monthly) a separate and distinct cause of action accrues on each payday, triggering on each occasion the running of a new period of limitations.

It follows that such an action is timely as to all paydays falling within the relevant limitations period. For the same reason, in calculating the amount of unpaid wages due in such an action the court will count back from the filing of the complaint to the beginning of the limitations period . . . and will award all unpaid wages earned during that period.

*Id.* at 707 (citations omitted).

The California Supreme Court's recitation of how a court should calculate back pay in a cause of action for unpaid wages is persuasive. It appears that the statute of limitations provision in this case would, in fact, limit the amount of available damages. Under California law, a statute of limitations provision is substantively unconscionable if it severely limits the time available to bring a statutory claim. *See Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 117, 12 Cal. Rptr. 3d 663 (2004) (holding that an employment arbitration agreement's six-month statute of limitations unlawfully restricted employee's ability to vindicate his rights and was therefore substantively unconscionable where the applicable statutes provide significantly longer periods within which to assert a claim). We accordingly find the statute of limitations provision substantively unconscionable.

4.     Arbitrator Selection Provision

The arbitration agreement provides, in part, "A single, neutral arbitrator who is licensed to practice law shall conduct the arbitration. . . . MHN shall provide Provider with a list of three neutral arbitrators from which Provider shall select its choice of arbitrator for the arbitration." CP at 49.     MHN suggests that because the AAA rules are incorporated by reference into the agreement, some hybrid between what is written in the agreement and the AAA rules will be used to select an arbitrator. *See* Br. of Appellant at 31-33. Although the agreement allows MHN to select any three neutral arbitrators, MHN claims that they are bound to select from a list provided by the AAA. This is not the case. Under both the commercial and employment rules, if the arbitration agreement provides its own method for arbitrator selection, that method is used and the AAA does not provide a list of neutral arbitrators.[5]

Substantive unconscionability concerns overly harsh or one-sided results. *Armendariz*, 24 Cal. 4th at 114. On its face, this arbitrator selection

---

[5] Am. Arbitration Ass'n, *Employment Arbitration Rules and Mediation Procedures* 24 (Nov. 1, 2009), *available at* http://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004362&revision=lates treleased; Am. Arbitration Ass'n, *Commercial Arbitration Rules and Mediation Procedures* 19 (June 1, 2009), *available at* http://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=lates treleased.

provision is substantively unconscionable. It allows MHN to select any three arbitrators whom it purports to be neutral, from which Brown and Hiett are bound to select the final arbitrator. Because the provision is both overly harsh and one-sided in favor of MHN, we find the arbitrator selection provision substantively unconscionable

5.     Fee shifting Provision

The arbitration agreement provides, in part, "The prevailing party, or substantially prevailing party's costs of arbitration, are to be borne by the other party, including reasonable attorney's fees." CP at 49. Brown and Hiett claim that this provision is substantively unconscionable because under the Washington Minimum Wage Act, attorney fees can be recovered only by a prevailing employee, not an employer. RCW 49.48.030. We agree and find the fee shifting provision substantively unconscionable.

Here, some of the underlying claims fall under the Washington Minimum Wage Act. Despite the choice of law provision, it is proper to consider Washington cases that have evaluated fee shifting provisions in the context of the underlying statutory claims.

In *Walters*, Division One of the Court of Appeals held that mandatory fee shifting provisions in arbitration agreements are unconscionable where the Washington Minimum Wage Act provides that only a prevailing

employee would be entitled to recover costs and fees. The risk of having to pay the employer's expenses and fees was a significant deterrent to employees contemplating initiating an action to vindicate their rights. *Walters v. A.A.A. Waterproofing, Inc.*, 151 Wn. App. 316, 321-22, 211 P.3d 454 (2009). Furthermore, the language in this agreement is mandatory, requiring that costs "*are* to be borne by the other party."[6] CP at 49 (emphasis added). *Cf. Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 310-11, 103 P.3d 753 (2004) (holding that an arbitration agreement's fee shifting provision was not substantively unconscionable where the language of the agreement is permissive rather than mandatory).

Mandatory fee shifting provisions in arbitration agreements are substantively unconscionable where the Washington Minimum Wage Act provides that only a prevailing employee would be entitled to recover costs and fees. We find the fee shifting provision substantively unconscionable.

D. Severability

The trial judge found the agreement procedurally unconscionable and that all five contested provisions are substantively unconscionable. VRP at

---

[6] Due to the mandatory nature of this language, we decline to apply the reasoning in *PacifiCare* in this context. An arbitrator would not have discretion to enforce the fee shifting provision. This is distinct from the punitive damages context where the arbitrator would have some discretion to construe the punitive damages provision in light of the applicable statutory damages provisions.

40-42. The PSTOA contains a severability provision which reads, "In the event that any provision of this Agreement is rendered invalid or unenforceable by any valid law or regulation of the State of California or of the United States, or declared void by any tribunal of competent jurisdiction, the remaining provisions of this Agreement shall remain in full force and effect." CP at 48. The trial court declined to sever the unconscionable provisions, finding that the agreement was permeated with unconscionabililty and that MHN set up the arbitration provision to put itself at an advantage. VRP at 43-44.

Under California law, the trial court's ruling on severability is reviewed for an abuse of discretion. *In re Marriage of Facter*, 212 Cal. App. 4th 967, 985, 152 Cal. Rptr. 3d 79 (2013); *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1144, 140 Cal. Rptr. 3d 492 (2012). It is proper to decline to sever unconscionable provisions if the agreement is permeated with unconscionability. *Armendariz*, 24 Cal. 4th at 124. Such permeation can be indicated when there is no single provision a court can strike to remove the unconscionable taint. *Id.* at 124-25.

Here, the trial court did not abuse its discretion in choosing not to sever the unconscionable provisions. Even where three provisions are found unconscionable rather than five, the agreement is permeated with

unconscionability and cannot be cured through severance. Notably, one of the agreement's greatest defects—which set of AAA rules governs—cannot be cured by severance alone.

## CONCLUSION

We find that the arbitration agreement is procedurally unconscionable. We also find that the forum selection and punitive damages provisions are not substantively unconscionable while the arbitrator selection, statute of limitations, and fee shifting provisions are. We hold that the agreement is unconscionable and the trial court did not abuse its discretion in choosing not to sever. We accordingly affirm the trial court.

WE CONCUR:

Madsen, C. J.

Wiggins, J.

No. 87953-2

GONZÁLEZ, J. (concurring)—I agree with the majority's well-reasoned conclusions that the arbitrator selection, statute of limitations, and fee shifting provisions of the arbitration agreement are unconscionable. But the punitive damages provision is unconscionable as well. Washington law provides that employers who intentionally and willfully violate employees' rights under chapter 49.52 RCW are liable for exemplary damages. The provision of the arbitration agreement that removes that penalty is unfairly one-sided and unconscionable.

RCW 49.52.070 specifically provides (with some exceptions not relevant here) that an employer who wrongfully withholds wages "shall be liable in a civil action . . . for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages." Under Washington law, "exemplary damages" is another term for "punitive damages." As we have explained in the past, "[e]xemplary damages are punitive in nature." *Kadoranian by Peach v. Bellingham Police Dep't*, 119 Wn.2d 178, 188, 829 P.2d 1061 (1992) (citing *Barr v. Interbay Citizens Bank of Tampa*, 96 Wn.2d 692, 698-99, 635 P.2d 441, 649 P.2d 827 (1981)). A competent arbitrator would no doubt so find. Indeed,

even the standard legal dictionary defines punitive and exemplary damages as synonymous terms. BLACK'S LAW DICTIONARY 448 (9th ed. 2009) (listing "exemplary damages" as an alternate term for "punitive damages").

Washington appellate courts have used the terms "exemplary" and "punitive" damages interchangeably, even when discussing the statute at issue here. In *Schilling v. Radio Holdings Inc.*, 136 Wn.2d 152, 157, 161, 961 P.2d 371 (1998), we affirmed a trial court judgment that included double damages under RCW 49.52.070, which we referred to as a "punitive award." The Court of Appeals similarly explained that "[a]s exemplary damages, [RCW 49.52.070's double damages] are intended to punish and deter blameworthy conduct." *Morgan v. Kingen*, 141 Wn. App. 143, 161-62, 169 P.3d 487 (2007); *see also McKee v. AT&T Corp.*, 164 Wn.2d 372, 401, 191 P.3d 845 (2008) (noting Washington's "limited examples of exemplary damages" while analyzing a service agreement's limitation on punitive damages); *Dailey v. N. Coast Life Ins. Co.*, 129 Wn.2d 572, 577, 919 P.2d 589 (1996) (noting that the legislature has explicitly authorized punitive damages in RCW 9.73.230(11), which literally provides for "exemplary damages").

We have also characterized statutes providing for double or treble damage awards as punitive damages, even when those statutes do not use the terms "punitive" or "exemplary." *See, e.g., Barr*, 96 Wn.2d at 699-700 (the Consumer Protection Act, chapter 19.86 RCW, and laws prohibiting usury and

2

trespass to trees, shrubs, and timber provide narrow exceptions to the rule that "punitive damages are contrary to public policy").[1]

Because RCW 49.52.070 offers specifically exemplary (or punitive) damages, the court should not rely on *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 123 S. Ct. 1531, 155 L. Ed. 2d 578 (2003). In *PacifiCare*, the Supreme Court found that it was at least doubtful whether an arbitration agreement's exclusion of punitive damages would prevent an arbitrator from awarding treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961. *Id.* at 405-06. However, RICO provides treble damages without identifying them as remedial or punitive. 18 U.S.C. § 1964(c). The Court explained that its prior cases had placed "treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards." *PacifiCare*, 538 U.S. at 405. In contrast to RICO's treble damages, Washington's legislature specified that an

---

[1] I recognize that an early decision of this court concluded that exemplary damages were not a form of punishment but rather provided actual damages for "undetermined loss and damage . . . such as damage to reputation, damage to pride and to feeling, and damage of that character, some of which, it is true, are more or less sentimental." *Levy v. Fleischner*, 12 Wash. 15, 17-18, 40 P. 384 (1895). However, later cases reason that "compensatory damages fully compensate the plaintiff for all injuries to person or property, tangible or intangible," *Barr*, 96 Wn.2d at 699-700, such that punitive or exemplary damages are separate from compensatory damages. Moreover, the statute in *Levy* authorized a potentially unlimited amount of exemplary damages, and the court was inclined to think "the legislature, in granting the jury the right to assess this peculiar, and not very well-defined, character of damages, to grant them only the right to assess actual damages, which could not be assessed, in the absence of this provision, under the general laws governing attachments." 12 Wash. at 17. In contrast, RCW 49.52.070 provides a specific measure of exemplary damages, most likely for the punitive purpose normally associated with that term.

employer "shall be liable in a civil action . . . for twice the amount of the wages unlawfully rebated or withheld *by way of exemplary damages*." RCW 49.52.070 (emphasis added).

The conflict between RCW 49.52.070 and the arbitration agreement is quite plain. The law allows employees to seek punitive damages from an employer who willingly and intentionally pays them less than required, and the agreement takes away the arbitrator's authority to award those damages. I would hold the punitive damages provision of the arbitration agreement unconscionable. I respectfully concur with the court's judgment that this arbitration clause is unconscionable and unenforceable.

*Brown v. MHN Government Services, et. al.*, No. 87953-2
(González, J. concurring)

_____
González, J.

Fairhurst, J.

Gordon McCloud, J.

Stephens, J.

5