IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| FELICE E. BRITT, individually and as Executrix of the ESTATE OF JANET R. WILDER, Deceased,<br><br>     Respondent,<br><br>  v.<br><br>AEGIS SENIOR COMMUNITIES, LLC, a Washington limited liability company, d/b/a AEGIS OF QUEEN ANNE AT RODGERS PARK,<br><br>     Appellant,<br><br>  and<br><br>DOES 1-10,<br><br>     Defendants. | No. 88460-3-1<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — In March 2023, Felice Britt helped her mother, Janice Wilder, move into Aegis. As part of the admission paperwork, Britt signed an agreement to arbitrate disputes. In December 2023, Wilder sustained a skin breakdown that progressed to an ulcer. The ulcer continued to develop and was monitored by Aegis staff. In January 2024, Wilder was sent to the hospital, where she passed away. Britt sued Aegis for damages under numerous theories including general negligence, negligent supervision and retention, wrongful death, and breach of contract. Britt moved to invalidate Aegis's arbitration agreement and compel litigation, which was granted. Aegis appeals, seeking reversal and remand to

compel arbitration. Britt claims otherwise and seeks fees on appeal. Because we find the arbitration agreement to be substantively unconscionable, we affirm the lower court; however, we deny Britt's request for attorney fees as premature.

FACTS

In March 2023, Felice Britt helped move her mother, Janet Wilder, into Aegis Queen Anne at Roger's Park assisted living facility. Britt was Wilder's power of attorney and handled all the admission paperwork from Aegis. Aegis e-mailed Britt the admission documents that Britt needed to review, electronically sign, and return. One of the documents contained in the paperwork was a three-page "voluntary agreement to arbitrate disputes." The agreement provided, in pertinent part,

> The resident acknowledges that he or she has the option of not signing this arbitration agreement and not being bound by the arbitration provisions contained herein. The execution of this arbitration agreement is voluntary and not a precondition to admission.
>
> . . .
>
> Any and all claims and disputes between the Resident and us arising from or related to the Residence and Care Agreement . . . or to your residency, care or services at the Community, including without limitation claims and disputes regarding personal injury, neglect, statutory or regulatory violations, and wrongful death, shall be arbitrated.

The agreement continued by noting interpretation and enforcement of the agreement would be controlled by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, except,

> any dispute involving unlawful detainer proceedings (eviction) or other disputes arising under the Washington Landlord Tenant Law (Title 59 RCW), discharge or transfer from the Community, claims for injunctive or equitable relief . . . or any claims that can be

2

> brought in small claims court shall not be subject to arbitration unless both parties agree.

The agreement also included clauses prohibiting class actions; requiring parties to bear their own costs and fees, unless otherwise provided by law; and enforcing confidentiality of all matters except as necessary for judicial review of the arbitration proceeding. Under the agreement, Britt had the option to revoke within 30 days of signing.

Britt signed and submitted the arbitration agreement on March 8, 2023. Britt admitted she moved through the admission documents "quickly" and did not consult anyone before signing them. Britt noted she looked at the rules her mother had to adhere to and "clicked through" the rest. Britt maintains no one from Aegis reviewed the arbitration agreement with her. Kaylan Moore, the general manager at Aegis, recalls meeting with Britt on the day Wilder moved in—March 17, 2023—and asking Britt if she had questions about or needed copies of any of the documents sent to her. Britt denies this meeting happened. Both parties agree that, whether or not they met that day, they did not discuss the arbitration agreement.

On December 17, 2023, Aegis identified a skin breakdown on Wilder's coccyx. Aegis created a temporary service plan, which required staff to report any new skin conditions. On January 16, 2024, Wilder passed away at the hospital after being transferred to the emergency room because of an abnormal blood draw. At the time of her death, the skin breakdown had developed into an infected pressure ulcer.

In August 2024, Britt brought a complaint for negligent supervision and wrongful death, among others,[1] against Aegis, alleging Wilder's death was proximately caused by Aegis's negligence in caring for Wilder's skin condition. In its answers and affirmative defenses, Aegis noted venue was not proper because Britt "may be bound by an arbitration agreement and the claims asserted herein therefore subject to the terms of the arbitration agreement." Britt moved to invalidate the agreement, claiming the agreement was substantively and procedurally unconscionable and, if necessary, the court should conduct an evidentiary hearing. Aegis opposed the motion.

The court granted Britt's motion, noting it found "the arbitration agreement to be substantively unconscionable, due to limitations on discovery inherent to arbitration, given the nature and complexity of the claims." Aegis appealed.

ANALYSIS

We review a court's decision to grant or deny arbitration de novo. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 342, 103 P.3d 773 (2004). Generally, Washington favors arbitration, but the courts will invalidate an arbitration agreement when it is unconscionable. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 46, 470 P.3d 486 (2020). Whether an arbitration agreement is unconscionable "is a preliminary question for judicial consideration." *Burnett*, 196 Wn.2d at 46. The burden to show an arbitration agreement is unconscionable is

---

[1] The complaint also included claims of general negligence, breach of contract, abuse of vulnerable adult, conduct below minimum standard of care, negligent misrepresentation, loss of consortium, injury and damages, expenses incurred and claimed, and violation of the Consumer Protection Act, ch. 19.86 RCW.

on the party opposing arbitration. *Zuver v. Airtouch Communications, Inc.*, 153 Wn.2d 293, 302, 103 P.3d 753 (2004). There are two types of unconscionability: substantive and procedural. *Zuver*, 153 Wn.2d at 303. A party challenging an arbitration agreement does not need to show both; either is sufficient to invalidate an agreement. *Adler*, 153 Wn.2d at 345.

1. Substantive Unconscionability

An arbitration agreement is substantively unconscionable when " 'a clause or term in the contract is alleged to be one-sided or overly harsh.' " *Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 898, 28 P.3d 823 (2021) (internal quotation marks omitted) (quoting *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995)). In determining whether a provision is one-sided or overly harsh, courts have asked "whether the provision is shocking to the conscience, monstrously harsh, and exceedingly calloused." *Burnett*, 196 Wn.2d at 57.

A. Discovery

Aegis contends the trial court erred when it found "the arbitration agreement to be substantively unconscionable, due to limitations on discovery inherent to arbitration, given the nature and complexity of the claims." Aegis maintains the arbitration agreement did not impermissibly limit discovery because discovery limitations are inherent in arbitration, and the agreement had no specific rules limiting discovery. Britt maintains the limitations the FAA imposes on discovery would significantly hamper her ability to prepare for arbitration. Because the arbitration agreement's restrictions on discovery unfairly advantage Aegis, we conclude the provision is substantively unconscionable.

5

Limitations on discovery are an inherent feature of arbitration: "[B]y agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.' " *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). But when a discovery limitation unfairly disadvantages a party, it may be substantively unconscionable. *See e.g.*, *Woodward v. Emeritus Corp.*, 192 Wn. App. 584, 609-10, 368 P.3d 487 (2016) (holding an arbitration agreement unconscionable because the rules limited discovery and disadvantaged the party with the burden of proof).[2]

Here, the arbitration agreement did not specify rules governing the discovery process; therefore the FAA applied. Section 7 of the FAA is the only provision to addresses discovery:

> The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case.

9 U.S.C. § 7. In *CVS Health Corp. v. Vividus*, LLC, 878 F.3d 703 (9th Cir. 2017), the Ninth Circuit considered the scope of section 7. The court determined, "A plain reading of the text of section 7 reveals that an arbitrator's power to compel

---

[2] Very little case law in Washington addresses discovery limitations in arbitration agreements, and no cases discuss the discovery rules of the FAA.

the production of documents is limited to production at an arbitration hearing." *CVS Health Corp.*, 878 F.3d at 706.

Here, Aegis contends the arbitration agreement lacks "delineation of specific discovery procedures," therefore it is not unconscionable, because "arbitration clauses limiting discovery cannot be rejected as categorically unconscionable." But this argument fails to consider that, in the absence of specific language in the agreement, the FAA controls. Applying the holding in *CVS Health Corp.*, in combination with the arbitration agreement at issue, the FAA prohibits Britt from conducting prehearing discovery. Without the opportunity to conduct discovery before the arbitration, Britt would not be able to develop her legal claims, and Aegis would have an unfair advantage—Aegis would be the only party able to depose its staff and examine documents from the facility prior to arbitration.

The situation here is like *Woodward*. In *Woodward*, the court held a discovery provision to be unconscionable because it was "foreseeable that most of the relevant evidence is in the possession of [the employer] and its present and past employees, not the estate. And the estate bears the burden of proof." 192 Wn. App. at 610. Aegis contends *Woodward* is not persuasive because the arbitration agreement in that case included specific discovery provisions. But, again, that argument ignores the discovery provision in the FAA.

7

Because the arbitration agreement's discovery process is subject to the discovery rules of the FAA and will preclude Britt from conducting even minimal discovery to develop her claims, it is substantively unconscionable.[3]

B.  Claim Exclusions

Aegis contends the claim carveouts in the arbitration agreement are not substantively unconscionable because they apply equally to both parties.  Britt maintains the carveouts are one-sided and unfair because they allow only Aegis access to legal recourse.  Because the claim carveouts heavily favor Aegis and limit damages Britt can recover, the provision is unconscionable.

When a remedies limitation provision "blatantly and excessively" favors one party, resulting in only that party having access to legal recourse, the provision is substantively unconscionable.  *See Zuver*, 153 Wn.2d at 318; *Brookdale Senior Living Cmtys., Inc. v. Hardy*, 2015 WL 13446704, at *4 (W.D. Wash. June 5, 2015) (court order) (holding a mutuality provision unconscionable where one party could bring an eviction action, "while any cause of action belonging to [the other party] would be subject to mandatory arbitration").

Here, the arbitration agreement stated:

Claims and disputes shall be resolved by submission to neutral, binding arbitration in accordance with the [FAA]; except that any dispute Involving unlawful detainer proceedings (eviction) or other

---

[3] The trial court's order invalidated the arbitration agreement based solely on the unconscionability of the discovery limitations.  Because we may "affirm on any grounds supported by the record," *Peterhans v. University of Washington*, 34 Wn. App. 2d 745, 754, 571 P.3d 322, *review denied*, 5 Wn.3d 1020 (2025), Aegis addresses all arguments Britt raised in her motion.  Even though we may affirm the trial court's order based on the discovery issue alone, we quickly address each of Aegis's claims.

> disputes arising under the Washington Landlord Tenant Law
> (Title 59 RCW), discharge or transfer from the Community, claims
> for injunctive or equitable relief, actions for the appointment of a
> guardian ad litem, or any claims that can be brought in small claims
> court shall not be subject to arbitration unless both parties agree to
> arbitrate such proceedings.

Almost any claim that Britt could bring, such as negligence and wrongful death, must be arbitrated, but claims that only Aegis would bring (i.e., eviction) could be brought in court.

Aegis contends that because Britt is not asserting any causes of actions within the exclusions of the arbitration agreement, the issue is moot. Aegis cites to *Phillips v. Swedish Health Services*, 34 Wn. App. 2d 129, 141, 567 P.3d 625, *review denied*, 5 Wn.3d 1009 (2025), for support, but that case is distinguishable. In *Phillips*, the arbitration agreement restricted the award of punitive damages, regardless of what the law provided. 34 Wn. App. 2d at 141. The claim at issue was brought under the Washington Law Against Discrimination, chapter 49.60 RCW, which did not provide for punitive damages. Accordingly, the court found the claim had "no present impact." *Id.*

Here, the provision limiting all of Britt's claims to arbitration certainly has an impact. Just because Aegis is not bringing an excluded claim does not mean the impact of the provision is moot. While the provision applies equally to both parties, it "blatantly and excessively" favors Aegis by allowing it access to courts on claims only Aegis would bring, while leaving Britt with only the option of arbitration for those she is most likely to bring. *Zuver*, 153 Wn.2d at 318. Accordingly, the claim exclusions are substantively unconscionable.

9

C. Confidentiality

Aegis contends the confidentiality provision in the arbitration agreement is not unconscionable because both parties are jointly bound and, if it is unconscionable, it can be severed from the agreement. We disagree.

Confidentiality provisions in arbitration agreements are an exception to the constitutional requirement of open courts. *Barnett v. Hicks*, 119 Wn.2d 151, 159, 829 P.2d 1087 (1992). But when a confidentiality provision is one-sided and has the effect of diminishing a party's ability to prove a pattern of conduct or utilize findings of past arbitrations, the provision may be substantively unconscionable. *Zuver*, 153 Wn.2d at 315; *McKee v. AT&T Corp.*, 164 Wn.2d 372, 398, 191 P.3d 845 (2008) ("Confidentiality unreasonably favors repeat players."). Conversely, courts have upheld confidentiality provisions where disclosure is allowed as the law requires or if parties agree otherwise. *Romney v. Franciscan Med. Grp.*, 186 Wn. App. 728, 744-45, 349 P.3d 32 (2015).

Here, the confidentiality provision is one-sided and strictly forbids disclosure "[e]xcept as necessary in judicial review of arbitration proceedings." The provision prevents Britt from discovering a potential pattern wrongdoing and serves only to benefit Aegis. Accordingly, the provision is substantively unconscionable.

D. Class Action

Aegis contends the provision prohibiting class actions is not unconscionable because it would not be impractical for Britt to litigate her claim individually. We agree.

10

Class actions "serve a critical function in our legal justice system." *Cromer v. Tag Realty, LLC*, 35 Wn. App. 2d 839, 863, 582 P.3d 887 (2025). Class actions provide access to courts for individuals whose claims are meritorious, but who are "unable to afford or pursue individual lawsuits to obtain recovery." *Cromer*, 25 Wn. App. 2d at 863. Class actions are particularly vital in Consumer Protection Act (CPA)[4] claims, where "damage to any individual consumer is nominal," *Scott v. Cingular Wireless*, 160 Wn.2d 843, 853, 161 P.3d 1000 (2007), *overruled on other grounds as stated in Coneff v. AT&T Corp.*, 673 F.3d 1155 (9th Cir. 2012). But class action waivers in arbitration agreements are not per se unconscionable. *See Townsend v. Quadrant Corp.*, 153 Wn. App. 870, 882-84, 224 P.3d 818 (2009). When claims are fact specific and a party is not hindered from bringing their case because of cost efficiency (e.g., the damage is nominal), class action waivers are not unconscionable. *Townsend*, 153 Wn. App. at 883.

Here, Britt's case is not the type of case that lends itself to class action. Her case is fact specific and she does not present evidence of the cost of arbitration as compared to the value of her claim. *Townsend*, 153 Wn. Ap. At 883. *Cf. McKee*, 164 Wn.2d at 397 (invalidating a class action waiver because the individual claims were extremely small, "under $2 per month"). For these reasons, the class action provision in the arbitration agreement is not substantively unconscionable.

---

[4] Ch. 19.86 RCW.

E. Attorney Fees

Aegis claims the cost provision in the arbitration agreement is not unconscionable because Britt can still recover attorney fees as allowed by law. Britt agrees the provision would not be unconscionable if it allowed attorney fees under Washington law, but Britt claims the provision is unclear. Because the arbitration agreement allows for the application of Washington law and, therefore, attorney fees, we conclude this provision is not unconscionable.

When an arbitration agreement requires each party to bear their own costs and fees, thereby undermining the parties' ability to recover attorney fees under applicable law, that provision is substantively unconscionable. *Adler*, 153 Wn.2d at 355. In *Adler*, the court held a provision completely barring a party to recover attorney fees, even if provided by law, to be unconscionable because it " 'helps . . . the party with a substantively stronger bargaining position and more resources.' " 153 Wn.2d at 355 (alteration in original) (quoting *Alexander v. Anthony Int'l, LP*, 341 F.3d 256, 267 (3rd Cir. 2003).

Here, Britt only contends the costs provision is unconscionable to the extent it limits recovery of attorney fees under the Abuse of Vulnerable Adults Act (AVAA)[5] and the CPA. The FAA, which governs the arbitration agreement, does not discuss attorney fees. But, the arbitration agreement states, "To the extent Washington law does not conflict with the provisions of the FAA, the parties may pursue their rights under the Washington law governing arbitration proceedings. With respect to all other issues arising out of or relating to this agreement,

---

[5] Ch. 74.34 RCW.

12

Washington law will govern."  Accordingly, Britt can pursue attorney fees under Washington law, including the AVAA and CPA; therefore, the provision is not unconscionable.

### F. Severability

Because Washington favors arbitration, if an arbitration agreement contains a severability clause, "courts often strike the offending unconscionable provisions to preserve the contract's essential term of arbitration."  *Zuver*, 153 Wn.2d at 320 (declining to invalidate an entire agreement where only two provisions were unconscionable).  But, where unconscionable provisions pervade an agreement, courts have declined to sever the offending provisions and, instead, invalidate the entire agreement.  *Hill v. Garda CL Northwest, Inc.*, 179 Wn.2d 47, 58, 308 P.3d 635 (2013) (invalidating an arbitration agreement where severing the unconscionable clauses " 'significantly alter[s] both the tone of the arbitration clause and the nature of the arbitration contemplated by the clause' " (alteration in original) (quoting *Gandee v. LDL Freedom Enters., Inc.*, 176 Wn. 2d 598, 607, 293 P.3d 1197 (2013))).

Here, the claim exclusion, discovery limitation, and confidentiality provisions are substantively unconscionable and pervade the arbitration agreement.  Accordingly, we cannot sever these provisions without altering the essential terms of arbitration; therefore, the agreement is unenforceable.[6]

---

[6] Because we conclude the arbitration agreement is substantively unconscionable and unenforceable, we only address procedural unconscionability to the extent that we did not find it exists.

2. <u>Attorney Fees</u>

Britt requests attorney fees on appeal under RAP 18.1, RCW 74.34.200(3) (AVAA); RCW 19.86.090 (CPA). Aegis contends this request is premature. We agree with Aegis.

RAP 18.1 provides that applicable law may grant a party the right to recover reasonable attorney fees or expenses on review. While both the AVAA and CPA provide for attorney fees on appeal, we are only determining whether the arbitration agreement is enforceable, not deciding claims under either statute. Britt has not cited any law that warrants the recovery of fees in the current action. Accordingly, we deny Britt's request for fees.

We affirm.

WE CONCUR: